Commonwealth *v.* Hines, Appellant.

Submitted June 11, 1974. Before WATKINS, P. J., JACOBS, HOFFMAN, CERCONE, PRICE, VAN DER VOORT, and SPAETH, JJ.

*Laurence J. Di Stefano, Jr.,* and *Glickman & Dranoff,* for appellant.

*James Garrett, David Richman, Mark Sendrow,* and *Steven H.* **Goldblatt,** Assistant District Attorneys, *Abraham J.* **Gafni,** Deputy District Attorney, *Richard A. Sprague,* First Assistant District Attorney, and *F. Emmett Fitzpatrick,* District Attorney, for Commonwealth, appellee.

OPINION BY VAN DER VOORT, J., September 23, 1974:

The Appellant, Clarence E. Hines (also known as Eddie McClure) was found guilty of several charges, including aggravated robbery, arising out of an incident on a Philadelphia street in February, 1972. He files this direct appeal following denial of his post-trial motions by the court below. The Appellant raises two claims:

(1) The evidence was insufficient to support the conviction; and

(2) No probable cause existed for his arrest.

Our review of the record leads us to the conclusion that both claims lack merit.

The Appellant was tried by a jury, and on an appeal challenging the sufficiency of the evidence, it is well established that we must accept as true all of the Commonwealth's evidence, and reasonable inferences arising therefrom, in determining whether the jury could have properly found guilt beyond a reasonable doubt. *Commonwealth v. Walley,* 225 Pa. Superior Ct. 465, 310 A. 2d 381 (1973). The record in the instant case, viewed in that light, reveals that in the early evening of February 3, 1974, a cab driver was hired by two men, who the cab driver later positively identi-

fied at trial as the Appellant and his co-defendant. They directed him to drive to the 6200 block of Lebanon Avenue, and when they arrived there asked that he wait for them. He showed hesitancy about doing this, so the Appellant offered him a five dollar tip, which apparently quickly changed his mind. Before leaving the cab, the Appellant carefully instructed the driver as to exactly where the cab was to be parked and in what direction it was to be headed.

A few minutes after his passengers left the cab, the driver heard screams from the direction in which they had departed. He got out of his cab to investigate, and "approximately four car lengths away", he observed a "scuffle" in front of a fruit store; he continued to approach and moved to within ten feet of the participants. He observed the Appellant holding a man on the ground and beating him with the butt of a gun. The man turned out to be the proprietor of the fruit store; the other passenger (the co-defendant) stood nearby during this beating. The two assailants noticed the cab driver watching them and moved towards him. Fearing for his safety, the cab driver ran to his cab, jumped in, and rode down Lebanon Avenue. At 61st Street he observed a policeman and told him what he had seen; both returned to the site of the store. When they arrived, they found other police already there and the victim in the lobby of a nearby building.

Meanwhile, the following information was being broadcast over the police radio: "Holdup at 63rd and Lebanon . . . two colored males, one wearing long brown coat, last seen running east on Lebanon Avenue from the scene of the holdup." Within a few minutes, at 61st Street and Oxford Avenue, a police officer noticed the Appellant and his co-defendant running down the street from the direction of 63rd Street and Lebanon Avenue. They were the only two individuals on the street at this time and they fit the broadcast descrip-

tion as set forth above. The officer ordered them to stop, but they continued to run. They finally did stop when the officer threatened to shoot if they did not stop. Just before their apprehension, the officer saw the Appellant throw a shiny object to the ground, which when recovered, proved to be a gun—later identified as the weapon used in the holdup and beating.

The Appellant and his co-defendant were returned to the scene of the crime, where they were identified by the cab driver. A search of the pair led to the recovery of $244.00 in cash, the amount taken from the proprietor of the fruit store. Furthermore, seven checks taken in the robbery were found concealed in the police wagon in which the Appellant was transported after his arrest and another check was found secreted in a radiator at the police station where Appellant was detained.

Viewing all of this evidence, there can be no doubt of its sufficiency in supporting Appellant's conviction. As for the Appellant's claim that there was no probable cause for his arrest, we find the recent decision in *Commonwealth v. Jones*, 457 Pa. 423, 322 A. 2d 119 (1974), particularly appropriate for comparison. In *Jones*, after a grocery store robbery, a neighbor chased the five youths who were involved. Some blocks away the youths split up; three jumped on a bus while two fled down an alley. At that point, an officer took up the chase of the robbers on foot until he lost track of one of them at an alley. The arresting officer, who had not been involved in the chase on foot, received the following description as part of the information over the police radio: ". . . four or five Negro males between the ages of 17 and 21 in dark clothing." The radio broadcast also noted the situs of the robbery and the direction in which the five fled. The appellant (Jones), who fit that somewhat general description, was stopped after being observed alone ". . . walk-

ing very fast in the 4900 block of Parrish Street, breathing heavily, perspiring, and frequently looking over his shoulder." The officer, after stopping the appellant, asked him where he was coming from. The appellant said he had been at a girlfriend's home. A call to a patrol wagon followed and upon its arrival Jones was frisked and taken away.

The Supreme Court found that probable cause existed for the initial apprehension of Jones. Justice NIX noted that the crucial test (for probable cause) is whether there were facts available at the time of the initial apprehension which would justify a man of reasonable caution in the belief that a crime had been committed and that the individual arrested was the probable perpetrator. As in *Jones,* there was clearly a reasonable basis (the radio broadcast) in the instant case for the officer to believe a crime had been committed. By way of further comparison, the apprehension of the appellants in both *Jones* and this case came almost contemporaneously with the police radio broadcast of the crime and descriptions of its perpetrators. In this case, the officer heard a radio description of two men, one with a brown coat—he spotted a pair matching this exact description running in the direction indicated as the path of flight in the broadcast. In *Jones,* the situation seems to have been less susceptible of an inference of guilty flight: only one individual was spotted matching the broadcast description (rather than all five) and that individual was walking, albeit furtively, from the direction of the crime, rather than running.

In light of all of the above, we find that there was a sufficient basis for the officer to conclude that the Appellant and his co-defendant were the individuals who were involved in the robbery which had just taken place. He was justified in stopping them and after they fled and threw a metal object away (the

gun), he was justified in arresting and searching them.

In concluding that probable cause existed in this case, we specifically reject the Appellant's claim that *Commonwealth v. Pegram,* 450 Pa. 590, 301 A. 2d 695 (1973) and *Commonwealth v. Berrios,* 437 Pa. 338, 263 A. 2d 342 (1970) should provide precedent for our decision here. As the Supreme Court noted in *Jones,* its decision in *Pegram* ". . . turned on the fact that flight *alone* is insufficient to supply probable cause" (Emphasis supplied). In *Berrios,* there was a time lapse of 20 minutes from the time of the receipt of the message until officers came upon the subjects. Further, as the *Jones* decision pointed out, in *Berrios* "there was nothing about the action of those two individuals when seen by the officers that would suggest that they were two of the men who were being sought other than the fact of their race."

The judgment of the lower court is affirmed.