410 A.2d 822

**COMMONWEALTH of Pennsylvania, Appellant,**

v.

**John J. KAZIOR.**

Superior Court of Pennsylvania.

Argued Dec. 6, 1978.

Filed Sept. 14, 1979.

Petition for Allowance of Appeal Denied Jan. 3, 1980.

John J. Burfete, Jr., Assistant District Attorney, Norristown, for Commonwealth, appellant.

Stephen G. Yusem, Norristown, for appellee.

Before VAN der VOORT, WIEAND and LIPEZ, JJ.

**WIEAND, Judge:**

John J. Kazior, the appellee herein, was arrested and charged with burglary,[1] theft,[2] receiving stolen property,[3] conspiracy,[4] possessing instruments of crime,[5] and possessing a prohibited offensive weapon.[6] Following a pre-trial hearing, the trial court found that appellee's arrest had been illegal. Therefore, the court entered an order which (1) suppressed physical evidence removed from appellee's vehicle, (2) suppressed appellee's confession, and (3) quashed the informations against appellee. The Commonwealth appealed.

■ An appeal by the Commonwealth is proper. If unreversed, the trial court's order will result in a termination of the prosecution. This is readily apparent from the court's order and also from the record. It seems clear, therefore, that we should hear and decide the Commonwealth's appeal. *Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A.2d 304 (1963), cert. denied, 375 U.S. 910, 84 S.Ct. 204, 11 L.Ed.2d 149 (1963).

■ The court's order quashing the informations was clearly in error. "It has long been the law in this and in other jurisdictions that 'the mere fact that the arrest of an accused person is unlawful is of itself no bar to a prosecution on a subsequent indictment or information, by which the court acquires jurisdiction over the person of the defendant.'" *Commonwealth v. Krall*, 452 Pa. 215, 219, 304 A.2d 488, 490 (1973). See also: *Commonwealth v. Walker*, 243 Pa.Super. 388, 365 A.2d 1279 (1976); *Commonwealth v. Mills*, 235 Pa.Super. 173, 340 A.2d 900 (1975). Thus, even if the trial court's determination of an unlawful arrest were cor-

1. 18 Pa.C.S. § 3502.

2. 18 Pa.C.S. § 3921.

3. 18 Pa.C.S. § 3925.

4. 18 Pa.C.S. § 903.

5. 18 Pa.C.S. § 907.

6. 18 Pa.C.S. § 908.

rect, an order barring prosecution on the subsequent information was improper.

We also disagree with the trial court's conclusion that appellee's arrest was unlawful. The undisputed evidence establishes a legal, warrantless arrest based on probable cause. On April 27, 1977, at or about 6:00 o'clock, A.M., Officer Charles Duffy heard on his police radio an announcement that a burglar alarm had sounded at Sousan's Pharmacy on York Road, in Elkins Park, Cheltenham Township. Duffy was then at or near the intersection of Church Road and York Road and realized that the pharmacy was only about 125 yards from his position. He looked down York Road and observed two men leave the front of Sousan's Pharmacy and run across York Road. One of the men, he noted, was wearing a green army jacket. Duffy turned into York Road to give pursuit but, despite the absence of traffic, lost sight of the two men. When he arrived at the drug store, he turned into Stahr Road, a side street opposite the pharmacy, where the men had run. Unable to find them, he returned to York Road where he met Officer McGinn, who, upon arrival, had examined the door of Sousan's Pharmacy and found a pane of glass broken therein. Together, they searched the area until their attention was directed by a resident to a vehicle parked at the intersection. Duffy and his fellow officer looked into the vehicle and saw appellee seated on the front floor, under the steering column, with his head on the driver's seat. Another young man was in a similar position on the passenger's side of the vehicle. The police knocked on the windows of the car, and appellee unlocked the door. As appellee emerged from the car, Duffy observed a green army jacket on the floor of the car where appellee had been crouched. When Duffy picked up the jacket, a pair of pliers fell from a pocket. Under the jacket was a "dagger-type knife." Also in plain view in the car were a flashlight and an empty jar with an amphetamine label.

Appellee was placed under arrest and taken to the Cheltenham Township police station. He was preliminarily ar-

raigned on burglary related charges at 10:00 o'clock, A.M. Thereafter, a search warrant for appellee's car was obtained and executed and, because of items found in the trunk of the car, additional drug related charges were brought. Appellee was told of the items found in his car and asked if he wanted to make a statement about them. He declined. He was then taken for preliminary arraignment on the additional drug charges, after which he was returned to the cell block. He was offered food, which he refused, and was permitted to make several telephone calls. Shortly before noon, the making of a statement was again discussed with appellee, and he agreed to give one. He was then advised of his *Miranda* rights, after which he answered a series of questions. The answers were reduced to writing and signed by appellee.

■ A legal arrest without a warrant depends upon probable cause. *Commonwealth v. Pinney,* 474 Pa. 210, 378 A.2d 293 (1977); *Commonwealth v. Bishop,* 425 Pa. 175, 228 A.2d 661 (1967), cert. denied, 389 U.S. 875, 88 S.Ct. 168, 19 L.Ed.2d 159 (1967). Probable cause exists if the facts and circumstances which are within the knowledge of the police at the time of arrest, and of which they have reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that a suspect has committed or is committing a crime. *Commonwealth v. Powers,* 484 Pa. 198, 398 A.2d 1013 (1979); *Commonwealth v. Culmer,* 463 Pa. 189, 195, 344 A.2d 487, 490 (1975); *Commonwealth v. Jones,* 457 Pa. 423, 428, 322 A.2d 119, 123 (1974); *Commonwealth v. Garvin,* 448 Pa. 258, 262, 293 A.2d 33, 35–36 (1972); *Commonwealth v. Bishop,* supra. The burden of showing probable cause is on the Commonwealth. *Commonwealth v. Holton,* 432 Pa. 11, 14–15, 247 A.2d 228, 230 (1968). The standard of probable cause, however, must be applied to the totality of the circumstances facing the police. Facts insufficient to justify an arrest if considered separately may in combination supply probable cause. *Commonwealth v. Roscioli,* 240 Pa.Super. 135, 138, 361 A.2d 834, 836 (1976). In *Commonwealth v. Tolbert,* 235 Pa.Super. 227, at p. 230, 341

A.2d 198, at p. 200 (1975), this Court said: "When we examine a particular situation to determine if probable cause exists, we consider all the factors and their total effect, and do not concentrate on each individual element. . . . We also focus on the circumstances as seen through the eyes of the trained officer, and do not view the situation as an average citizen might. . . . Finally, we must remember that in dealing with questions of probable cause, we are *not* dealing with certainties. We are dealing with the factual and practical considerations of everyday life on which reasonable and prudent men act. This is not the same 'beyond-a-reasonable-doubt' standard which we apply in determining guilt or innocence at trial." *Commonwealth v. Devlin*, 221 Pa.Super. 175, 289 A.2d 237 (1972).

■ Applying these standards to the facts of the instant case, the existence of probable cause appears with certainty. Officer Duffy learned that a burglary had occurred or was then in progress and saw two men running from the burglarized drug store. A search of the area produced two men hiding on the floor of a vehicle parked across the street from the drug store. When they emerged, there was in plain view on the floor of the car the green army jacket worn by one of the men as he ran from the drug store.

The existence of probable cause to arrest appellee is also apparent from the decided cases. In *Commonwealth v. Roscioli*, supra, the arresting officer had been on routine patrol when he saw two white males "duck" between parked vehicles. He saw the defendant place something on the ground, recognized him, and realized that he did not live in that neighborhood. He then received a radio report of a burglary in progress in the neighborhood, at a location approximately 40 seconds walk from where defendant had been observed. The defendant was stopped, asked what he was doing, and placed under arrest. The article which had been placed on the ground was retrieved and found to be a cigar box containing $180. These circumstances were "sufficient to warrant a prudent man in believing that the citizen had committed or was committing an offense."

In *Commonwealth v. Jones*, supra, a police officer received information via police radio that a robbery had been committed, together with a general description of the robbers and the direction of their flight. He came upon the defendant, who fit the description, six blocks from the scene of the robbery. Defendant was walking rapidly, breathing heavily, perspiring profusely and furtively looking over his shoulder. These facts constituted probable cause, it was held by the Supreme Court, to justify a warrantless arrest.

In *United States v. Young*, 355 F.Supp. 103 (E.D.Pa.1973), the court ruled that officers who knew that a bank robbery was in progress, but were not given a description of the perpetrator, had probable cause to arrest the defendant when they noticed him trotting or running across the street from the bank and looking backwards.

■ The appellee argues that Duffy's information concerning a burglary was hearsay derived from the police radio. Hearsay information transmitted by police radio may be considered in determining whether an officer has probable cause to make a warrantless arrest. The hearsay information derived from a police broadcast when combined with the personal observations of the officer may be sufficient to support a reasonable belief that a person has committed or is committing a crime. *Commonwealth v. Williams*, 262 Pa.Super. 508, 396 A.2d 1286 (1978); *Commonwealth v. Jones*, supra; *Commonwealth v. Roscioli*, supra; *Commonwealth v. Hines*, 230 Pa.Super. 290, 326 A.2d 485 (1974). By the time the arrest was made in the instant case, moreover, Officer McGinn had arrived and had observed the broken glass in the door of Sousan's drug store, thus confirming the information which Duffy previously obtained by radio.

■ The trial court was of the opinion that appellee's constitutional rights had been violated initially when the door of his vehicle was open and he was directed to get out of his car. Even if we were to accept the doubtful conclusion that probable cause to arrest did not then exist, a limited invasion of appellee's privacy for the purpose of

investigating possible criminal activity was constitutionally proper. *Adams v. Williams,* 407 U.S. 143, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972); *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); *Commonwealth v. Shoatz,* 469 Pa. 545, 366 A.2d 1216 (1976). See also: *Commonwealth v. Benson,* 239 Pa.Super. 100, 361 A.2d 695 (1976); *Commonwealth v. Galadyna,* 248 Pa.Super. 226, 375 A.2d 69 (1977). "The Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to simply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary . . . it may be the essence of good police work to adopt an intermediate response. A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at that time." *Adams v. Williams,* supra, 407 U.S. at 145–146, 92 S.Ct. at 1923, 32 L.Ed.2d at 616–617. After appellee had emerged from his vehicle, the police were not required to close their eyes to evidence which lay open to view on the interior of the car. Accordingly, we must reject the trial court's legal conclusion that the physical evidence found lying in the interior of appellee's car was the product of an unlawful search.

 We also conclude that appellee's confession cannot be suppressed as the fruit of an unlawful arrest. With respect to this confession, however, the trial court found further that it had been motivated by the finding of a bottle of amphetamines during an illegal search of the trunk of appellee's car. This bottle of amphetamines had been suppressed in a separate proceeding, and the record thereof is not now before this Court.[7] Appellee testified that he had been induced to give the statement because of the amphetamines found in the trunk of his car and because of a police threat to impound his car. The causal connection having

7. Statements made by appellee's counsel during the pre-trial suppression hearing in this case suggest that the bottle of amphetamines was suppressed because of a defective search warrant.

thus been shown, the Commonwealth had the burden of proving that the taint of the illegally seized evidence had been dissipated or that the confession was not only "truly voluntary but *also* free of any element of coerciveness" due to the use of the illegally seized controlled substance. *Commonwealth v. Rowe*, 445 Pa. 454, 459–460, 282 A.2d 319, 322 (1971). This the Commonwealth failed to accomplish.

The court below found that the illegally seized amphetamines had been used by the police to induce and did in part motivate appellee to make an incriminating statement. Our scope of review is limited to determining whether the trial court's finding " 'was a capricious disbelief of the evidence or was a palpable abuse of discretion or was based upon an error of law.' *Commonwealth v. Taper*, 434 Pa. 71, 77, 253 A.2d 90, 93 (1969)." *Commonwealth v. Rowe*, supra, 445 Pa. at 460, 282 A.2d at 322. An examination of the record discloses adequate evidence to support the trial court's finding. The suppression of appellee's statement, therefore, must be affirmed.

The motion to quash the appeal is denied. The suppression of appellee's written statement is affirmed. The remainder of the lower court's order, which suppresses physical evidence and quashes the several informations, is reversed, and the case is remanded for further proceedings.