468 A.2d 500

**COMMONWEALTH of Pennsylvania**

v.

**Dennis O'NEAL, Appellant.**

Superior Court of Pennsylvania.

Submitted May 31, 1983.

Filed Nov. 25, 1983.

Elaine DeMasse, Assistant Public Defender, Philadelphia, for appellant.

Jane Cutler Greenspan, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before ROWLEY, WIEAND and CIRILLO, JJ.

WIEAND, Judge:

Dennis O'Neal was convicted of robbery,[1] theft by unlawful taking[2] and possession of an offensive weapon[3] following a bench trial before the Honorable Leonard A. Ivanoski. On direct appeal from the judgment of sentence, O'Neal argues that the stolen money, the gun used in the robbery and other physical evidence, as well as his on-the-scene identification by the victim, should have been suppressed as products of an unlawful arrest. There is no merit in this contention; and, therefore, we affirm the judgment of sentence.

Officer Francis Regan, while on routine patrol at 6:10 a.m. on April 11, 1980, was approached by two persons who had emerged from the WaWa store at 3925 Walnut Street in Philadelphia. One of them said that the store had just been robbed. The other said that the robber was wearing a white cap, was armed with a shotgun, and had run north on Fortieth Street. He suggested that Regan could catch him if he hurried. Regan observed a man running north on Fortieth Street in the vicinity of Market Street. The man was uncovered but was the only person on the street at that hour. Regan pursued, with dome light flashing but without siren, and observed the running male turn west on to Filbert Street. When Regan also turned into Filbert Street, he found that the person being pursued had stopped, with hands up, and "paper money flying in the air like snow." Regan placed the man under arrest, recovered $98 in paper

1. 18 Pa.C.S. § 3701.

2. 18 Pa.C.S. § 3921.

3. 18 Pa.C.S. § 908.

currency, and took the man back to the store where he was immediately identified by the store clerk as the robber. That man was Dennis O'Neal. Also identified by the clerk was a peanut butter Tastykake which was in appellant's possession at the time of his arrest and which had been purchased by the robber just prior to the holdup. Officer Charles Mullen, who arrived as backup in response to a call for assistance from Regan, searched the area in which appellant had been arrested and recovered from a vacant lot on Filbert Street a long barreled pistol, referred to during trial as a sawed-off shotgun. It was identified by the victim as being similar to the gun used in the holdup. In the pocket of appellant's dark blue jacket was found a tan cap.

■ Appellant cannot complain that the police seized currency and a gun which he had abandoned. In *Commonwealth v. Williams*, 269 Pa.Super. 544, 410 A.2d 835 (1979), we said:

> The issue is not abandonment in the strict property-right sense, but whether appellant voluntarily discarded, left behind, or otherwise relinquished his interest in the property so that he could no longer retain a reasonable expectation of privacy with regard to it.... Abandoned property may be obtained and used for evidentiary purposes by the police. The evidence must be suppressed only if the abandonment has been coerced by unlawful police action.

*Id.*, 269 Pa.Superior Ct. at 547, 410 A.2d at 836 (citations omitted). See also: *Commonwealth v. Hall*, 475 Pa. 482, 380 A.2d 1238 (1977); *Commonwealth v. Hines*, 230 Pa.Super. 290, 326 A.2d 485 (1974).

■ Here, there was no unlawful police conduct. Assuming, for purposes of argument, that Regan did not have probable cause to arrest the only person running on Fortieth Street after he learned of the robbery, he could nevertheless approach him for purposes of investigating appellant's possible involvement. "[T]he Fourth Amendment does not require a policeman who lacks the precise level of information necessary for probable cause to arrest to sim-

ply shrug his shoulders and allow a crime to occur or a criminal to escape. On the contrary, *Terry*[4] recognizes that it may be the essence of good police work to adopt an intermediate response.... A brief stop of a suspicious individual, in order to determine his identity or to maintain the status quo momentarily while obtaining more information, may be most reasonable in light of the facts known to the officer at the time." *Adams v. Williams,* 407 U.S. 143, 145–146, 92 S.Ct. 1921, 1923, 32 L.Ed.2d 612, 616–617 (1972) (citations omitted). See also: *Commonwealth v. Webster,* 291 Pa.Super. 271, 435 A.2d 1217 (1981); *Commonwealth v. King,* 247 Pa.Super. 443, 372 A.2d 908 (1977).

■ Both *Terry* and *Adams* involved frisks of defendants on less than probable cause. With respect to the currency and gun in the instant case, there was no intrusion of appellant's person, for these items had been abandoned before Officer Regan was able to overtake and approach the running appellant. Regan's approach of appellant was neither unreasonable nor unlawful. He had reason to believe that a robbery had occurred and that the robber was running north on Fortieth Street. He looked and observed that the street was empty except for a male person running north in the vicinity of Market Street, two blocks away. He pursued in his police vehicle, using his dome light but not the siren, in order to alert possible motorists as he crossed Chestnut and Market Streets. We reject as absurd the contention that Regan's haste in overtaking O'Neal rendered the policeman's action unreasonable. Under the circumstances of this case, anything less would have rendered it impractical, if not impossible, for Regan to overtake and approach the running figure in order to conduct the investigation which he was authorized to make.

■ When Regan turned the corner of Filbert Street and observed appellant with hands up and currency floating to earth about him, Regan had probable cause to believe that appellant was the robber. Therefore, he could properly

4. *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

effect an arrest without warrant. See and compare: *Commonwealth v. Moore,* 300 Pa.Super. 488, 446 A.2d 960 (1982); *Commonwealth v. Webster, supra; Commonwealth v. Everett,* 234 Pa.Super. 249, 338 A.2d 662 (1975); *Commonwealth v. Hines, supra.*

■ Appellant argues that Regan could not properly rely upon information supplied by persons at the scene of the crime. This Court has previously held, however, that police may quite properly rely upon information given by disinterested observers. See: *Commonwealth v. McCain,* 275 Pa.Super. 192, 418 A.2d 677 (1980); *Commonwealth v. Montgomery,* 246 Pa.Super. 371, 371 A.2d 885 (1977). We are satisfied that the information imparted to Officer Regan by the disinterested third persons provided him with ample reason to take prompt action.

■ The currency and gun, having been abandoned by appellant, could be seized by the police and used for evidentiary purposes. Similarly, the Tastykake and tan cap could be used as evidence because they were seized by the police as incidents of a lawful arrest. See: *Commonwealth v. Holzer,* 480 Pa. 93, 102 n. 5, 389 A.2d 101, 106 n. 5 (1978); *Commonwealth v. Plusquellic,* 303 Pa.Super. 1, 9, 449 A.2d 47, 51 (1982).

■ Finally, it is now settled that prompt on-the-scene identifications are generally reliable and, in the absence of some special element of unfairness, are not subject to suppression on constitutional grounds. *Commonwealth v. Turner,* 454 Pa. 520, 314 A.2d 496 (1974); *Commonwealth v. Aaron,* 255 Pa.Super. 289, 386 A.2d 1006 (1978); *Commonwealth v. Santiago,* 229 Pa.Super. 74, 323 A.2d 826 (1974).

The police conduct was not unlawful or unreasonable, and the trial court properly refused to suppress the inculpatory evidence which police obtained as a result of the stopping of appellant following the robbery.

The judgment of sentence is affirmed.