588 A.2d 922

COMMONWEALTH of Pennsylvania

v.

Gregory S. LEIB, Appellant.

Superior Court of Pennsylvania.

Argued Oct. 3, 1990.

Filed Feb. 14, 1991.

Reargument Denied April 11, 1991.

John G. Bergdoll, III, York, for appellant.

Gerald A. Lord, Asst. Dist. Atty., York, for Com., appellee.

Before OLSZEWSKI, BECK and HOFFMAN, JJ.

HOFFMAN, Judge:

This appeal is from a judgment of sentence for driving while under the influence of alcohol. Appellant raises numerous issues for our review. For the reasons that follow, we affirm.

Appellant was arrested in York County on June 13, 1987 and charged with driving while under the influence of alcohol to a degree which renders a person incapable of safe driving,[1] and driving while the amount of alcohol by weight in the blood is 0.10% or greater.[2] The facts that led to his arrest are as follows. At approximately 4:15 that morning, officer Shane Becker of the Spring Grove police received a report of a vehicle stopped in the middle of Church Road, less than a mile from the police station. *See* N.T., October 23, 1989, at 10. When he responded to that report, Officer Becker observed appellant's vehicle parked in the middle of the road. Officer Becker approached the vehicle, and found appellant, unconscious and slumped over the steering wheel. *Id.* at 14-15. After approximately three minutes of shaking and shouting, Officer Becker managed to awaken appellant, who "smelled of alcohol," *id.* at 15, and whose eyes were "glassy, bloodshot, [and] watery." *Id.* at 18. Officer Becker then administered a field sobriety test,

1. 75 Pa.C.S.A. § 3731(a).
2. 75 Pa.C.S.A. § 3731(a)(4).

which appellant failed. *Id.* at 19–20. Officer Becker placed appellant under arrest, and took him to the hospital, where appellant consented to a blood test. *Id.* at 21. Appellant's blood alcohol content (BAC) was .263[3] at the time the test was administered, approximately 45 minutes after appellant's arrest. *See* N.T., June 2, 1989, at 15.

On October 20, 1987, appellant filed an omnibus pretrial motion to suppress evidence and quash the complaint against him. After additional briefing, hearing and argument on June 2, 1989, that motion was denied by order dated August 10, 1989. A jury trial was held on October 23, 1989, and appellant was convicted on both counts. Post-trial motions were timely filed and were denied by order dated November 16, 1989. On February 12, 1990, appellant was sentenced to 30 days-to-twelve months incarceration. This timely appeal followed.

Initially, we note our disapproval of the brief appellant's counsel, John G. Bergdoll, Esq., has filed. The Statement of Questions covers two pages and thirty lines, thereby violating Pa.R.A.P. 2116(a). In addition, although he purports to raise but seven issues in the statement, Mr. Bergdoll in fact has burdened this court with more than fifteen separate arguments. Some of the arguments verge on boilerplate, are unintelligible, or raise points that Mr. Bergdoll recognizes have been rejected by Courts in this Commonwealth. This indiscriminate approach brings to mind the remarks by the Honorable Ruggerio J. Aldisert of the United States Court of Appeals for the Third Circuit, who reflected:

"With a decade and a half of federal appellate court experience behind me, I can say that even when we reverse a trial court it is rare that a brief successfully demonstrates that the trial court committed more than one or two reversible errors. I have said in open court that when I read an appellant's brief that contains ten or

---

**3.** A BAC of .263 is equivalent to an actual blood alcohol content of .263%. These terms will be used interchangeably as they appear in the record.

twelve points, a presumption arises that there is no merit to *any* of them. I do not say that it is an irrebuttable presumption, but it is a presumption that reduces the effectiveness of appellate advocacy. Appellate advocacy is measured by effectiveness, not loquaciousness."

*United States v. Hart,* 693 F.2d 286, 287 n. 1 (3d Cir.1982) (citation omitted); *see also Commonwealth v. Sirbaugh,* 347 Pa.Super. 154, 160–61, 500 A.2d 453, 456 (1985). In the interest of judicial economy, we will not address at length *all* of the many arguments advanced by Mr. Bergdoll; however, despite our disapproval of Mr. Bergdoll's approach, we have carefully considered each of the arguments, and we determine that appellant is not entitled to relief.[4]

## I. SUFFICIENCY AND RULE 1100 CLAIMS.

■ Appellant first argues that the evidence is insufficient to support his conviction. Specifically, appellant argues that because there is no evidence as to when he operated the vehicle and what condition he was in at any time he operated it, *see* Appellant's Brief at 9, the evidence is insufficient to support his conviction. We disagree.

Our standard of review of sufficiency claims is well-settled:

[w]here a defendant challenges his conviction on appeal the test of sufficiency of evidence is whether, viewing all evidence admitted at trial, together with all reasonable inferences therefrom, in the light most favorable to the Commonwealth, the trier of fact could have found that each element of the offenses charged was supported by

---

**4.** We should note that Mr. Bergdoll's approach makes it extremely difficult to conduct effective appellate review. Mr. Bergdoll filed an omnibus pre-trial motion in which he raised over twenty-five claims. After trial, Mr. Bergdoll raised more than ten additional issues, and also incorporated by reference all of the pre-trial claims. The opinions below understandably did not address all of these claims; as a result, in many instances we do not have the benefit of the trial court's views on the claims raised on this appeal. In addition, the Commonwealth has briefed only seven of the issues raised by appellant. Thus, we are further hampered in that we do not have the benefit of the Commonwealth's view on the bulk of appellant's claims.

evidence and inferences sufficient in law to prove guilt beyond a reasonable doubt.

*Commonwealth v. Jackson,* 506 Pa. 469, 472–73, 485 A.2d 1102, 1103 (1984); *see also Commonwealth v. Quarles,* 361 Pa.Super. 272, 280–81, 522 A.2d 579, 583 (1987). Appellant was convicted of violating 75 Pa.C.S.A. § 3731(a)(1) and (4), which provide:

§ 3731. Driving under influence of alcohol or controlled substance

(a) Offense defined.—A person shall not drive operate or be in actual physical control of the movement of any vehicle while:

(1) under the influence of alcohol to a degree which renders the person incapable of safe driving....

\* \* \* \* \* \*

(4) the amount of alcohol by weight in the blood of the person is 0.10% or greater.

*Id.* We explained the significance of the broader "in control" language in *Commonwealth v. Crum,* 362 Pa.Super. 110, 523 A.2d 799 (1987):

[T]he concept of "actual physical control" has recently been embodied in the Pennsylvania Suggested Standard jury instructions for driving under the influence of alcohol.

[ (2) The crime of driving under the influence can be committed not only by a person who drives but also by one who "operates" or is "in actual physical control" of the movement of a vehicle. A person does not drive unless he actually has the vehicle in motion, however, a person may operate or be in actual physical control of the movement of a standing vehicle. These terms are more comprehensive than the term drive. (They cover certain situations where a person under the influence is a threat to public safety even though he is not driving at the time.) Thus a person operates a vehicle if he is in actual physical control of either the machinery of the motor vehicle or the movement of the vehicle itself.]

*Id.,* 362 Pa.Superior Ct. at 114–15, 523 A.2d at 801–802 (quoting Pa.SSJI (Crim.) 173731). Finally, we note that, generally speaking, a finder of fact is free to believe all, part or none of a witness's testimony. *Commonwealth v. Verdekal,* 351 Pa.Super. 412, 419–20, 506 A.2d 415, 419 (1986).

Here, appellant testified that he had been driving home when his vehicle broke down, and that he had consumed the beer that raised his BAC to .263 while awaiting aid. *See* N.T., October 23, 1989 at 47–61. However, the testimony at trial established the following uncontroverted facts. There were several open beer containers in appellant's vehicle, the keys were in the ignition, and appellant was found slumped over the steering wheel unconscious. Furthermore, appellant smelled of alcohol, failed a sobriety test administered at the scene, and had a BAC of .263% forty five minutes after he was found. These facts clearly were sufficient to support appellant's conviction. In his own testimony, appellant admitted both that he had been driving and drinking on the day in question. The jury's verdict simply reflects its disbelief of appellant's claim that he consumed the alcohol after his vehicle broke down, and, of course, the jury was free to disbelieve the self-serving aspects of this testimony. *See Verdekal, supra.* Thus, we are satisfied that, viewed in the light most favorable to the Commonwealth, a sufficient basis existed for the jury to have reasonably found that appellant was in control of his vehicle while under the influence of alcohol as prohibited by 75 Pa.C.S.A. § 3731(a)(1) and (4). *See generally, Commonwealth v. Crum, supra* (evidence sufficient to uphold conviction of appellant charged under § 3731(a)(1) based on police determination that he was intoxicated after discovering him unconscious at the wheel of his vehicle stopped at the side of the road); *Commonwealth v. Matsinger,* 288 Pa.Super. 271, 431 A.2d 1043 (1981) (evidence that defendant was found asleep behind wheel of vehicle with motor running and in gear sufficient to support inference that defendant had control of vehicle).

■ Appellant's second contention is that the trial court erred in allowing him to go to trial because the Commonwealth failed to timely file for an extension of time as required by Rule 1100. Specifically, appellant argues that because the Commonwealth failed to file an application for extension of time before the end of the January 1989 term, as directed by the trial court, the case should have been dismissed.

■ Our standard of review of trial court decisions regarding whether the Commonwealth has met the necessary burden to justify granting an extension of time is well-settled.

.... [W]hen this court is reviewing the trial court's ruling "that the Commonwealth has met its burden, we shall consider only the evidence presented by the Commonwealth and so much evidence as presented by the defense as, fairly read in the context of the record as a whole, remains uncontradicted."

*Commonwealth v. Newman*, 382 Pa.Super. 220, 229, 555 A.2d 151, 155 (1989) (citations omitted).

Rule 1100 provides, in relevant part, that:

Rule 1100 Prompt Trial

... (a)(2) Trial in a court case in which a written complaint is filed against the defendant after June 30, 1974 shall commence no later than one hundred eighty (180) days from the date on which the complaint is filed....

\* \* \* \* \* \*

(f) At any time before trial, the defendant or his counsel may apply to the court for an order dismissing the charges with prejudice on the ground that this rule has been violated. A copy of such motion shall be served upon the attorney for the Commonwealth, who shall also have the right to be heard thereon. Any order granting such motion shall dismiss the charges with prejudice and discharge the defendant.

Pa.R.Crim.P. 1100(a)(2) & (f).[5] When the Commonwealth is unable to bring a defendant to trial within the time specified by Rule 1100, it has the burden of proving by a preponderance of the evidence that it acted with due diligence and was still unable to have the case ready for trial. *See Commonwealth v. Maxwell*, 505 Pa. 152, 477 A.2d 1309 (1984); *Commonwealth v. Cruz*, 362 Pa.Super. 282, 524 A.2d 507 (1987). The test set out above is the only test to be applied in determining whether a defendant has been denied a speedy trial. *See Commonwealth v. Whitaker*, 467 Pa. 436, 359 A.2d 174 (1976); *Commonwealth v. Garbett*, 256 Pa.Super. 488, 390 A.2d 208 (1978). Finally, where the Commonwealth, despite due diligence, cannot timely bring a defendant to trial because of complex pre-trial motions filed by a defendant, its failure to do so does not entitle a defendant to discharge. *See Commonwealth v. Reeves*, 378 Pa.Super. 29, 548 A.2d 260 (1988); *Commonwealth v. Atkinson*, 364 Pa.Super. 384, 528 A.2d 210 (1987).

Here, the record reveals that although the trial was held over two years after the complaint against appellant was filed, Judge Rauhauser granted the Commonwealth several extensions to bring the case to trial. *See, e.g.*, R.R. at a13–a14. On December 15, 1988, Judge Rauhauser entered the order in question directing that the case be brought to trial before the end of the January 1989 term. However, the Commonwealth failed to bring the case to trial within that time, and appellant now contends that because of this failure the trial court should have dismissed the charges against him. We disagree. The Commonwealth's March 10, 1989 Application to Extend Time for Commencement of Trial states that in spite of its due diligence in attempting to bring the case to trial, pending pre-trial defense motions prevented it from trying the case at that time. The trial court accepted this explanation, and granted the Commonwealth's Application. Because the Commonwealth's argument is supported by the record, *see* R.R. at a3–a12, we

**5.** By order of December 31, 1987, effective immediately, our Supreme Court amended Rule 1100. We must apply the prior rule in effect at the time of appellant's trial.

cannot say that the trial court erred in granting the Commonwealth's Application. *See Commonwealth v. Reeves* and *Commonwealth v. Atkinson, supra.* Appellant's argument, therefore, is meritless.

## II. CLAIMS REGARDING THE ADMISSIBILITY OF THE BLOOD TEST.

Appellant next raises two arguments concerning the admissibility of the blood test results. Specifically, appellant argues that his constitutional rights were violated because the blood test results were illegally obtained; and that the implied consent law is unconstitutional. We disagree.

■ Appellant's first claim is that the Commonwealth's "seizure" of the blood test *results* violated the fourth amendment. Appellant's argument in this regard is somewhat confusing. Appellant apparently suggests that, even where a defendant consents to a blood test, the Commonwealth cannot obtain the results of that test unless the defendant consents to the release of the results, a warrant is issued, or exigent circumstances exist. We concur in the suppression court's conclusion that the initial test of appellant's blood was proper. *See* N.T., October 23, 1989 at 21; Trial Court Order, August 10, 1989. Thus, appellant's derivative argument concerning the admissibility of the test results clearly is meritless. *See Commonwealth v. Hipp*, 380 Pa.Super. 345, 357, 551 A.2d 1086, 1091–92 (1988); *Commonwealth v. Kelly*, 365 Pa.Super. 28, 32, 528 A.2d 1346, 1347–48 (1987), *appeal denied* 517 Pa. 598, 535 A.2d 1057 (1987); *see also Commonwealth v. Haynos*, 363 Pa.Super. 1, 525 A.2d 394 (1987), *appeal denied* 517 Pa. 604, 536 A.2d 1329 (1987).

■ Appellant's second claim is that the implied consent law, 75 Pa.C.S.A. § 1547, is unconstitutionally vague.[6]

---

**6.** Appellant also asserts that (1) the administration of the blood test violated his right to counsel, and (2) Pennsylvania's implied consent law "violates the Fifth, Sixth and Fourteenth Amendments of the Constitution of the United States and also Article 1, Section 9 of the Pennsylvania Constitution." Appellant also argues that (3) Section

There is a strong presumption in favor of constitutionality, and a party who challenges the constitutionality of an Act of the General Assembly has a "heavy burden" of persuasion. *E.g., Commonwealth v. Mikulan,* 504 Pa. 244, 247, 470 A.2d 1339, 1340 (1983) (plurality opinion). For legislation to be declared unconstitutional, it must "clearly, palpably and plainly" violate the constitution. *Id.* The *Mikulan* plurality summarized the principles governing due process/void for vagueness challenges as follows:

> The touchstone of due process is protection of the individual against arbitrary action of the government. *Wolff v. McDonnell,* 418 U.S. 539, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974). "As generally stated, the void-for-vagueness doctrine requires that a penal statute define the criminal offense with sufficient definiteness that ordinary people can understand what conduct is prohibited and in a manner that does not encourage arbitrary and discriminatory enforcement." *Kolender v. Lawson,* 461 U.S. 352, 358, 103 S.Ct. 1855, 1858, 75 L.Ed.2d 903, 909 (1983). The principle [sic] aspect of the doctrine is the requirement that legislation establish minimal guidelines to govern law enforcement for, without such minimal guidelines, a criminal statute might permit "a standardless sweep [that] allows policemen, prosecutors, and juries to pursue their personal predilictions [sic]." *Id.,* 461 U.S. at 358, 103 S.Ct. at 1858, 75 L.Ed.2d at 909 *quoting Smith v. Goguen,* 415 U.S. 566, 575, 94 S.Ct. 1242, 1248, 39 L.Ed.2d 605 (1974). In *Commonwealth v. DeFrancesco,* 481 Pa. 595, 393 A.2d 321 (1978), this Court applied the above principles to uphold a disorderly conduct/refusal to disperse statute, 18 Pa.C.S.A. § 5502, against a due process/vagueness challenge, and identified the "root of the vagueness doctrine" as a
>
>> "rough idea of fairness. It is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct

3731 is unconstitutional. Appellant provides no argument in support of these assertions; accordingly, we cannot consider these claims.

and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited...."

481 Pa. at 608, 393 A.2d 321 *quoting Colten v. Kentucky,* 407 U.S. 104, 110, 92 S.Ct. 1953, 1957, 32 L.Ed.2d 584 (1972).

Similarly in *Commonwealth v. Heinbaugh,* 467 Pa. 1, 354 A.2d 244 (1976), we held that a penal statute

"must give reasonable notice of the conduct which it proscribes to a person charged with violating its interdiction." 467 Pa. at 5, 354 A.2d 244. However, statutes alleged to be vague are not "to be tested against paradigms of draftsmanship. Rather, the requirements of due process are satisfied if the statute in question contains reasonable standards to guide the prospective conduct." *Id.,* 467 Pa. at 6, 354 A.2d 244.

504 Pa. at 251–52, 470 A.2d at 1342–43.

We are satisfied that the implied consent statute is sufficiently specific to protect against arbitrary governmental conduct, and to give reasonable notice of the proscribed conduct at which it is aimed. Initially, it should be emphasized that § 1547 itself does not proscribe any particular conduct, but merely provides a manner through which violations of § 3731 (driving under the influence) may be proved. The statute is tailored to detect only the conduct proscribed by § 3731. Appellant nevertheless argues that the statute is vague for two reasons: first, because there are "no standards for allowing testing except those of reasonable grounds and arrest" and, second, because the statute "allows testing to be admitted although improper devices may be used, improper methods may be used and despite that any test presented in evidence may have no evidentiary value whatsoever in that no time limit is set on the time for testing." Brief for Appellant at 16. These arguments are meritless. The "reasonable grounds" required by the statute (and which this Court has construed to mean "probable cause", *see Commonwealth v. Cieri,* 346 Pa.Super. 77, 87, 499 A.2d 317, 322 (1985)), is not a vague standard at all, but merely restates the constitutional requirement necessary to

conduct a search (such as a blood test) when a person is suspected of driving under the influence. Similarly, even a cursory review of subsection (c), which specifies in great detail the procedures governing chemical tests, indicates that the "methods" and "devices" to be used for testing are sufficiently described as to survive an attack on vagueness grounds. Accordingly, appellant is not entitled to relief on this ground.

## III. CLAIMS REGARDING CHEMICAL ANALYSIS OF BLOOD.

Appellant's next set of claims concerns "the procedures, persons, and devices" that were used to analyze his blood sample.[7] Appellant argues that the blood test results should not have been admitted into evidence because the Commonwealth failed to show that "the procedures, persons, and devices" used to test his blood were "specifically" approved by the Department of Health and, there-

---

7. In a sub-argument labelled "Admissibility of Blood Test", appellant also argues that a single sample of blood, drawn "sometime after the event of driving", is insufficient to prove that appellant's blood alcohol content exceeded .10% at the time he was driving. *See* Brief for Appellant at 18–25. The thrust of appellant's argument is that, for the Commonwealth to prove a violation of 75 Pa.C.S.A. § 3731(a)(4), it must introduce evidence relating the test results back to the time that he was driving the car. This sufficiency claim, which is distinguishable from the claims in the text concerning the manner of testing appellant's blood, is waived, in that it was not "set forth in the statement of questions involved or suggested thereby." *See* P.R.A.P. 2116(a); *Commonwealth v. Duden,* 326 Pa.Super. 73, 473 A.2d 614 (1984). Even if the claim is not waived, however, it clearly is meritless, as this Court has explicitly and repeatedly refused to impose a requirement on the Commonwealth to relate blood alcohol tests back to the time a defendant was driving. *See, e.g., Commonwealth v. Slingerland,* 358 Pa.Super. 531, 518 A.2d 266 (1986); *Commonwealth v. Speights,* 353 Pa.Super. 258, 509 A.2d 1263 (1986).

Appellant also argues that the hospital's samples of his blood should have been preserved, and that because the samples were not preserved, that they should have been suppressed. *See* Appellant's Brief at 29. This court has explicitly rejected appellant's argument in *Commonwealth v. Gamber,* 352 Pa.Super. 36, 506 A.2d 1324 (1986). Appellant has not attempted to show that *Gamber* is no longer valid authority, and our research reveals that the decision has not been overruled. Thus, we are bound by *Gamber,* and appellant's argument is meritless.

fore, the Commonwealth's burden under subsection (c) of the implied consent statute was not met. Section 1547(c) provides in relevant part:

> **(c) Test results admissible in evidence.**—In any summary proceeding or criminal proceeding in which the defendant is charged with a violation of section 3731 or any other violation of this title arising out of the same action, the amount of alcohol or controlled substance in the defendant's blood, as shown by chemical testing of the person's breath, blood or urine, which tests were conducted by qualified persons using approved equipment, shall be admissible in evidence.
>
> . . . . .
>
> (2) Chemical tests of blood or urine shall be performed by a clinical laboratory licensed and approved by the Department of Health for this purpose using procedures and equipment prescribed by the Department of Health. For purposes of blood and urine testing, qualified person means an individual who is authorized to perform those chemical tests under the act of September 26, 1951 (P.L. 1539, No. 389), known as "The Clinical Laboratory Act."

*Id.* (footnote omitted). The Clinical Laboratory Act, *see* 35 P.S. § 2151 *et seq.,* in turn vests the Department of Health with the power to adopt rules and regulations governing testing procedures. *Id.* § 2161.1. The Commonwealth, of course, bears the burden of establishing, by a preponderance of the evidence, that the test results were admissible under the implied consent statute. *See Commonwealth v. Culp,* 378 Pa.Super. 213, 218–19, 548 A.2d 578, 581 (1988).

Here, a review of the pre-trial hearing on the admissibility of the test results reveals that the Commonwealth met its burden under § 1547(c). At the hearing, the Commonwealth presented the testimony of Dr. Robert Elser, the director of clinical chemistry and clinical toxicology at York Hospital. Dr. Elser testified that the blood test in question was performed at York Hospital, in a laboratory that was state licensed and approved by the Department of Health, and that the equipment and procedure used in testing were

approved by the Department of Health. *See* N.T., June 2, 1989 at 14. Dr. Elser further testified that the people performing the tests in the York Hospital laboratory were qualified personnel under the Clinical Laboratory Act. *Id.* With specific regard to appellant's blood sample, Dr. Elser stated that the laboratory test was performed by Ms. Cindy Sharp, whose qualifications were that she had a four year degree in medical technology, and she had worked at the hospital for at least eighteen years. *Id.* at 11–18. When considered in light of our case law on the subject, this evidence clearly was sufficient to establish that the laboratory, equipment, procedures, and personnel employed to test appellant's blood were qualified and approved in accordance with the implied consent statute. *See Commonwealth v. Garofalo,* 386 Pa.Super. 363, 563 A.2d 109 (1989); *Commonwealth v. Kravontka,* 384 Pa.Super. 346, 558 A.2d 865 (1988); *Commonwealth v. O'Hayer,* 345 Pa.Super. 73, 497 A.2d 649 (1985).[8]

## IV. CLAIMS REGARDING "IMPROPER INVESTIGATION AND PROSECUTION PROCEDURES".

Appellant's first argument regarding the Commonwealth's investigation and prosecution procedures is that

8. We note that this case clearly is distinguishable from *Commonwealth v. Culp, supra,* a case upon which appellant places great emphasis. In *Culp,* the Commonwealth not only attempted to prove that the *laboratory* was an approved facility by having the court take judicial notice of that fact, *see, e.g., Commonwealth v. Garofalo, supra,* 386 Pa.Super. at 369, 563 A.2d at 112 (trial court took judicial notice of fact that laboratory was approved for blood alcohol testing; *held,* trial court affirmed); *Commonwealth v. Kravontka, supra,* 384 Pa.Super. at 357, 558 A.2d at 871, but *also* attempted to prove, solely through judicial notice, that a department of health approval necessarily meant that the *procedures, personnel and equipment* were properly qualified and approved to perform the tests mandated by the Clinical Laboratory Act. The *Culp* Court held, in conformity with *Garofalo* and *Kravontka,* that judicial notice was proper to show only that the *laboratory* in question had been approved. *See* 378 Pa.Super. at 219, 548 A.2d at 581 (judicial notice of the *Pennsylvania Bulletin* (which lists approved facilities) "merely is dispositive of the fact that the Department of Health approved the hospital's laboratory for testing purposes.").

there was insufficient evidence to support a finding of probable cause, and therefore appellant should never have been arrested.[9] Because there was no probable cause, appellant argues, the fruits of that arrest (the BAC test) should have been suppressed. We disagree.

As noted above, when officer Becker first found appellant, he was unconscious. After several attempts to awaken him, officer Becker was able to rouse appellant. However, appellant smelled of alcohol, his eyes were watery and his speech was slurred. *See* N.T., October 23, 1989 at 18. After Appellant failed a field sobriety test, he was arrested. *Id.* at 19–20.

A legal arrest without a warrant depends upon probable cause. Probable cause exists if the facts and circumstances which are within the knowledge of the police at the time of arrest, and of which they have reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that a suspect has committed or is committing a crime. *Commonwealth v. Kazior,* 269 Pa.Super. 518, 410 A.2d 822 (1979) (citations omitted). We have carefully reviewed the record, and we are satisfied that the above-mentioned facts were sufficient to provide officer Becker with probable cause to arrest appellant. Thus, the trial court did not err in refusing to suppress the BAC results obtained incident to that arrest. *See Commonwealth v. O'Neal,* 321 Pa.Super. 323, 468 A.2d 500 (1983).

Appellant also argues that all statements he made to the arresting officer before he was *"Mirandized"* should have been suppressed. In support of this proposition, appellant cites only to this Court's opinion in *Commonwealth v. Bruder,* 365 Pa.Super. 106, 528 A.2d 1385 (1987), *allocatur denied,* 518 Pa. 635, 542 A.2d 1365 (1988), *rev'd sub nom. Pennsylvania v. Bruder,* 488 U.S. 9, 109 S.Ct. 205, 102 L.Ed.2d 172 (1988). Appellant's claim is patently meritless,

**9.** Appellant makes no specific argument in support of this claim, but instead simply restates the standards governing a probable cause analysis.

as our decision in *Bruder* was reversed by the Supreme Court of the United States. *See also Commonwealth v. Peth,* 522 Pa. 136, 560 A.2d 139 (1989) (per curiam), *reversing* 374 Pa.Super. 265, 542 A.2d 1015 (1988) (Opinion by HOFFMAN, J.) (following Superior Court panel opinion in *Bruder*).

Appellant next argues that the Commonwealth did not establish a *corpus delicti.* Appellant offers no argument in support of this claim; hence, we cannot consider this claim.

Appellant also argues that he is entitled to relief because of a delay in his preliminary arraignment. Appellant, however, makes no factual argument in this regard. Instead, appellant's entire argument is devoted to a summary of the contents of Pa.R.Crim.P. 130 and 140, followed by a boilerplate statement that "[i]t is contended that the rules set forth above were not complied with and further that such rules are contrary to the Fifth, Sixth and Fourteenth Amendments of the Constitution of the United States". Brief for Appellant at 33–34. Because we cannot discern the basis for appellant's contention regarding his preliminary arraignment, he is not entitled to relief on this ground.

 Appellant's final argument concerning the Commonwealth's investigation and prosecution procedures is that the trial court erred in allowing the Commonwealth to make prejudicial statements to the jury in his closing. We disagree.

 It is well-settled that improper actions by the Commonwealth do not constitute grounds for relief unless they result in prejudice to the defendant. *Commonwealth v. Taraschi,* 327 Pa.Super. 179, 475 A.2d 744 (1984); *see also Commonwealth v. Collins,* 462 Pa. 495, 341 A.2d 492 (1975) (error by prosecutor grounds for new trial only when such error contributed to conviction by moving mind of jury toward conviction); *Commonwealth v. Davis,* 452 Pa. 171, 305 A.2d 715 (1973) (prosecutorial misconduct basis for new trial only when harmful to defendant). Here, although he does not cite to the place in the record where the statement

occurred, appellant argues that the Commonwealth erred in "characterizing to the Jury the blood alcohol level as high and several 'times' the legal limit without supporting evidence ..." *See* Appellant's Brief at 41–42. However, the court itself instructed the jury that the legal limit for intoxication is .10 BAC, *see* N.T., October 23, 1989 at 109, and appellant's BAC was .263 when he was tested approximately 45 minutes after he was arrested. *Id.* at 37. The Commonwealth's statement was directly supported by facts contained in the record, and therefore was not erroneous. Thus, appellant's argument is without merit.

## V. WHETHER APPELLANT WAS ENTITLED TO DISPOSITION IN LIEU OF CRIMINAL PROSECUTION.

Appellant's final argument is that the trial court erred in denying his request for a preliminary disposition in lieu of criminal proceedings under the drug dependent statute. *See id.* This precise argument was raised and rejected by this court in *Commonwealth v. Snyder*, 385 Pa.Super. 58, 560 A.2d 165 (1989). In *Snyder*, speaking through Judge Beck, we held that "a preliminary disposition under the drug dependent statute, 35 [Pa.C.S.A.] § 780–118(a), is inapplicable where a person is charged with driving under the influence." *Id.*, 385 Pa.Superior Ct. at 71, 560 A.2d at 171. To the extent appellant asks us to revisit this issue, we note that it is well-settled that "[u]ntil a decision of the Superior Court is overruled by the Supreme Court, that decision is the law of this Commonwealth." *Baker v. Aetna Cas. & Sur. Co.*, 309 Pa.Super. 81, 92, 454 A.2d 1092, 1098 (1982), *overruled on other grounds, Antanovich v. Allstate Ins. Co.*, 320 Pa.Super. 322, 467 A.2d 345 (1983) (en banc). *See also Yudacufski v. Commonwealth, Dept. of Transp.*, 499 Pa. 605, 612, 454 A.2d 923, 926 (1982). This rule, of course, is not absolute; thus, in "compelling circumstances," a court may decide not to follow existing precedent. *Id.* As our Supreme Court noted in *Fadgen v. Lenkner*, 469 Pa. 272, 365 A.2d 147 (1976):

[W]hile the principle of *stare decisis* is a wise course of judicial action, it is not an ironclad rule and is to be controlling only where applicable. So that, when it is determined that a past precedent is no longer in accord with modern realities, and the rationale justifying the old rule no longer finds support, then the pledge of certainty gives way 'to new conditions and to the persuasion of superior reasoning.' *Griffith v. United Airlines*, 416 Pa. 1, 23, 203 A.2d 796, 806 (1964)....

*Id.*, 469 Pa. at 282, 365 A.2d at 152. Appellant, who has previously been convicted of driving while intoxicated,[10] has failed to show in what respect the approach in *Snyder* has lost its vitality, or any other compelling circumstance that might undermine *Snyder's* precedential value. Instead, he merely levels an attack at the reasoning employed in that case. Under these circumstances, we must decline appellant's invitation not to follow *Snyder*. We therefore conclude that the trial court did not err in refusing appellant's request for preliminary disposition under the Controlled Substance Drug, Device and Cosmetic Act.

## CONCLUSION

After carefully reviewing each of appellant's numerous claims of error, we are satisfied that he is not entitled to relief. Accordingly, we affirm the judgment of sentence.

Judgment of sentence affirmed.

---

10. *See* N.T. Sentencing, February 2, 1990 at 1.