560 A.2d 165

COMMONWEALTH of Pennsylvania

v.

Stanley M. SNYDER, Appellant.

COMMONWEALTH of Pennsylvania, Appellant,

v.

Stanley M. SNYDER, Appellee.

Superior Court of Pennsylvania.

Argued Oct. 13, 1988.

Filed June 5, 1989.

60

Frederick P. Kramer, West Chester, for appellant (at 369) and appellee (at 370).

Stuart B. Suss, Assistant District Attorney, West Chester, for Com., appellee (at 369) and appellant (at 370).

Before ROWLEY, WIEAND and BECK, JJ.

BECK, Judge:

The issues in this case involve questions of (1) whether a person with prior driving under the influence of alcohol or controlled substances convictions under 75 Pa.Cons.Stat. Ann. § 3731 (Purdon Supp.1988) may obtain a preliminary disposition in lieu of criminal proceedings under the drug dependent statute 35 Pa.Stat.Ann. § 780–118(a) (Purdon

1977) [1]; (2) whether filing an information eight months after arrest requires dismissal pursuant to either Pa.R.Crim.P. 130(b), (d), 131(b), or 315(a); (3) whether there was adequate evidence of chain of custody to allow the results of a blood test into evidence; and (4) whether a person sentenced to a term of imprisonment under 75 Pa.Stat.Ann. § 3731(e) may be placed on work release as part of that sentence. Appellant, Stanley Snyder has raised the first three issues and the Commonwealth has cross-appealed on the work release issue.

We conclude that the trial court correctly held that under the circumstances presented: (1) no preliminary disposition is available under the drug dependent statute, 35 Pa.Cons. Stat.Ann. § 780–118(a); (2) that there should be no dismissal of the second complaint under Pa.R.Crim.P. 130, 131 or 315; (3) the results of the blood test were properly admitted into evidence; and (4) a judge may include work release as part of the sentence of imprisonment under 75 Pa.Cons. Stat.Ann. § 3731(e). We therefore affirm the judgment of sentence.

On June 23, 1984 Stanley Snyder was arrested for driving while intoxicated. He was transported to Southern Chester County Medical Center for a chemical test of his blood. Two samples were taken in front of the arresting officer, transported to the Kennett Square police station and stored there overnight. Dr. Thomas Logan of the Pennsylvania State Police laboratory in Lima testified that he received blood samples with a request for a laboratory analysis on the blood of Stanley Snyder. Dr. Logan conducted the analysis which resulted in a finding of .26% blood alcohol concentration.

On June 24, 1984 the Commonwealth filed a criminal complaint against Snyder charging him with violations of 75 Pa.Cons.Stat.Ann. § 1501 (Purdon 1977 & Supp.1988) (relating to license requirements), § 1543 (Purdon Supp.1988)

1. Section 780–118(a) relates to drug dependent persons. Section 780–102 of Title 35 makes clear that those who abuse alcohol fall within the scope or § 780–118(a). 35 Pa.Stat.Ann. § 780–102 (Purdon 1977 & Supp.1988).

(relating to driving with a suspended license), § 3714 (Purdon 1977) (relating to reckless driving), and § 3731(a)(1) (Purdon Supp.1988) (relating to driving under the influence of alcohol or controlled substances). On July 10, 1984 after a preliminary hearing, Snyder was held over for court on all charges. In Criminal Information No. 1442–84, Snyder was charged with the above violations.

Prior to trial on Information No. 1442–84, Snyder petitioned for a preliminary disposition under the drug dependent statute, 35 Pa.Stat.Ann. § 780–118(a), which allows for the appointment of a physician to determine the propriety of a rehabilitative preliminary disposition as an alternative to criminal prosecution in cases of drug dependency. The court denied the petition, but certified the ruling as appropriate for appeal in October, 1984. The Superior Court denied Snyder's petition for permission to appeal on May 30, 1985 and the Supreme Court denied relief on June 4, 1987. The trial judge stayed all proceedings after his October 1984 order certifying the interlocutory appeal.

While the stay was in effect on the first complaint, the Commonwealth filed a second criminal complaint against Snyder on March 25, 1985 charging him with violation of 75 Pa.Cons.Stat.Ann. § 3731(a)(4) (relating to driving with a blood alcohol content greater than .10%). On August 21, 1985, the trial judge lifted the stay order for the purpose of permitting a preliminary hearing on the second complaint. This criminal complaint became Criminal Information No. 2053–85.

The trial judge refused to dismiss the second complaint for delay and consolidated both complaints for trial. Prior to trial the judge ruled, pursuant to Pa.R.Crim.P. 131(b), (c) (relating to failure to include offenses arising out of same incident in a single complaint), that Snyder would not be liable for any additional costs caused by the filing of the second complaint. The trial judge sat without a jury and found Snyder guilty of 75 Pa.Cons.Stat.Ann. §§ 1501, 3714, and 3731(a)(1) under the first complaint and 75 Pa.Cons. Stat.Ann. § 3731(a)(4) under the second complaint.

At sentencing, the trial court found that Snyder had three previous convictions under § 3731 for driving under the influence and imposed the minimum sentence required by the statute, sentencing Snyder to one to two years imprisonment with the first three weeks to be served in total incarceration and the remainder of the time to include work release. *See* 75 Pa.Cons.Stat.Ann. § 3731(e)(1)(iv). The trial judge ruled that the § 3731(a)(4) charge dealing with Snyder's blood alcohol level merged with the § 3731(a)(1) driving under the influence charge and imposed no further sentence of imprisonment. He imposed fines for the other two violations. On the appeal before us Snyder has not challenged the finding of three prior convictions nor has the Commonwealth challenged the merging of the charges.

Preliminary disposition

The first issue we address is Snyder's assertion that the trial court committed an error of law when it refused to grant his request for a court appointed physician pursuant to the drug dependent statute 35 Pa.Stat.Ann. § 780–118(a). As discussed more fully, *infra*, if the court had granted Snyder's petition, the court would have appointed a physician to determine whether Snyder should receive rehabilitative treatment in lieu of subjecting him to the criminal prosecution and penalties of the driving under the influence statute, with the final decision on rehabilitation or prosecution resting with the district attorney. We hold that the rehabilitative provisions of the drug dependent statute are not applicable as a preliminary disposition to persons charged with driving under the influence.[2] Our conclusion is based on an analysis of the driving under the influence statute.

In determining the application of a statute, our primary objective is to discern the legislative intent behind that statute. 1 Pa.Cons.Stat.Ann. § 1921(a) (Purdon 1988). The primary method of determining the meaning of a statute is simply to look at the plain and unambiguous meaning

**2.** The same conclusion was reached in dictum in *Commonwealth v. Kubiac,* 379 Pa.Super. 402, 550 A.2d 219 (1988).

of the statute as written by the Legislature. *Id.* at § 1921(b). However, where the meaning is not clear on the face of the statute, the courts are instructed to look at other factors in determining legislative intent. Thus, in construing the legislative intent behind a statute the court may look to (1) the occasion and necessity of the statute, *id.* at § 1921(c)(1); (2) the circumstances in which it was enacted, *id.* at § 1921(c)(2); (3) the mischief to be remedied, *id.* at § 1921(c)(3); and (4) the object to be attained by the law, *id.* at § 1921(c)(4). *See Moon Township v. Police Officers of Moon Township,* 508 Pa. 495, 498 A.2d 1305 (1985). In addition, the court may consider the former law on the same subject, 1 Pa.Cons.Stat.Ann. § 1921(c)(5) (Purdon 1988); *Commonwealth v. Wescott,* 362 Pa.Super. 176, 523 A.2d 1140, *appeal denied,* 516 Pa. 640, 533 A.2d 712 (1987), as well as what the consequences of a particular interpretation would be. 1 Pa.Cons.Stat.Ann. § 1921(c)(6) (Purdon 1988); *Tyler v. King,* 344 Pa.Super. 78, 496 A.2d 16 (1985). Moreover, we must recognize that in construing the statute there is a presumption that the legislature did not intend unreasonable or absurd results. 1 Pa.Cons.Stat.Ann. § 1922(1) (Purdon 1988); *Commonwealth v. Fisher,* 485 Pa. 8, 400 A.2d 1284 (1979).

In interpreting statutes we also consider the rules of construction governing situations where two statutes are at issue. In such cases, a court attempts to construe the statutes in harmony if possible. *Appeal of Yerger,* 460 Pa. 537, 333 A.2d 902 (1975); *Commonwealth v. Smith,* 375 Pa.Super. 419, 544 A.2d 991 (1988) (en banc).

However, where a general statute and special statute are in conflict, the special prevails unless the general was enacted later in time and the Legislature intended the general provision to prevail. 1 Pa.Cons.Stat.Ann. § 1933 (Purdon 1988). Additionally, where two general statutes are in conflict, the one enacted on the later date prevails. *Id.* at § 1936 (Purdon 1988); *Community College of Beaver County v. Community College of Beaver County, Society of the Faculty,* 473 Pa. 576, 375 A.2d 1267 (1977).

■■■ The primary statute before us is a provision of the driving under the influence statute, 75 Pa.Cons.Stat.Ann. § 3731 as amended in 1982 and 1984 (DUI statute). The circumstance for amending the DUI statute was the need to respond to the grim situation of death and serious injury caused by intoxicated drivers on our roads and highways. *See generally*, Comment, *The New Pennsylvania Drunk Driving Law: Last Call for the One–For–The–Road Era*, 87 Dick.L.Rev. 805 (1983). Much of the motivation for the new law was provided by citizens groups such as the Mothers Against Drunk Drivers. *Id.* It is clear from an examination of the prior law under § 3731, that the object to be attained by the wholesale amendments of 1982 was a more thorough and exacting means for dealing with intoxicated drivers in an effort to limit the carnage they caused. *Id.* at 813–817. Thus, for example, under the prior § 3731(d) "[a]ny person violating any of the provisions of this section [was] guilty of a misdemeanor of the third degree." 75 Pa.Cons.Stat.Ann. § 3731(d) (Purdon 1977) (amended 1982). Under current § 3731(e), violators are guilty of a misdemeanor of the second degree with provisions for a minimum fine and mandatory terms of imprisonment. We thus see the circumstances that gave birth to the current driving under the influence laws and the evil they seek to control. We will now examine the consequences, reasonableness and integrity of interpreting § 3731 to include Snyder's reading which would incorporate the preliminary disposition provisions of the drug dependent statute into the DUI statute.

The language in the DUI statute which gives rise to appellant's argument provides for preliminary disposition in the form of Accelerative Rehabilitative Disposition (ARD) or "any other form of preliminary disposition" for certain persons charged with DUI. 75 Pa.Cons.Stat.Ann. § 3731(e)(2). *See also id.* at §§ 1548, 3731(e)(7), (8). Appellant urges us to find that the language "any other form of preliminary disposition" includes preliminary disposition under the drug dependent statute. The driving under the influence statute does not define or describe what is meant

by "other forms of preliminary disposition." ARD is the only form of preliminary disposition expressly named in section 3731 and in the related statutes.

Snyder insists that the preliminary disposition of the drug dependent statute, section 780-118(a) is applicable to him, an individual with repeated DUI convictions. The relevant portion of the drug dependent statute provides:

Disposition in lieu of trial or criminal punishment

If a person charged with a nonviolent crime claims to be drug dependent or a drug abuser and prior to trial he requests appropriate treatment, including but not limited to, admission or commitment under the Mental Health and Mental Retardation Act of 1966 in lieu of criminal prosecution, a physician experienced or trained in the field of drug dependency or drug abuse shall be appointed by the court to examine, if necessary, and to review the accused's record and advise the government attorney, the accused and the court in writing setting forth that for the treatment and rehabilitation of the accused it would be preferable for the criminal charges to be held in abeyance or withdrawn in order to institute treatment for drug dependence or for the criminal charges to be prosecuted. The government attorney shall exercise his discretion whether or not to accept the physician's recommendation.

Like ARD, as limited by the driving under the influence statute, the drug dependent statute is aimed at nonviolent offenders in cases where treatment or rehabilitation may be preferable in lieu of criminal prosecution. *See infra.* Moreover, as with ARD, the choice to pursue a disposition under the drug dependent statute is subject to the discretion of the prosecuting attorney. *See* Pa.R.Crim.P. 175, 176.

Under the DUI statute, ARD is a highly restricted form of preliminary disposition. *See* 75 Pa.Cons.Stat.Ann. §§ 3731(e)(6), (7) (governing additional conditions for ARD under the drunk driving laws and circumstances for revocation of ARD). Further, under section 3731(d) persons are not eligible for ARD where (1) previously they have been

found guilty of a charge brought under section 3731 or accepted ARD under that section within the last seven years; (2) there has been a 75 Pa.Cons.Stat.Ann. § 1542 (Purdon 1977) violation relating to habitual offenders; and (3) an accident occured in relation to the current charge that resulted in death or serious injury. *Id.* at § 3731(d).[3] It is thus clear from the face of the statute that ARD is only available to first time non-habitual offenders who have not been involved in a serious accident.

Snyder requests that we interpret the language, "any other form of preliminary disposition" in the driving under the influence statute to include preliminary disposition under the drug dependent statute. His interpretation, however, undermines and works at cross purposes with ARD. Under Snyder's reading of the statute, defendants with multiple DUI convictions would be eligible for preliminary dispositions under the drug dependent statute where they would be ineligible for acceptance into ARD. We can discern no reason why the Legislature would have intended this broad and conceivably less restrictive route of preliminary disposition in face of the fact that the Legislature has continued to enact more stringent penalties for DUI violations.

We further find that where the Legislature has carefully constructed a specific statutory role for preliminary dispositions, namely ARD, it would work an unreasonable result to allow application of an analogous and less restrictive form

---

3. 75 Pa.Cons.S.A. 3731(d) states:

Certain dispositions prohibited.—The attorney for the Commonwealth shall not submit a charge brought under this section for Accelerated Rehabilitative Disposition if:

(1) the defendant has been found guilty of or accepted Accelerated Rehabilitative Disposition of a charge brought under this section within seven years of the date of the current offense;

(2) the defendant committed any other act in connection with the present offense which, in the judgment of the attorney for the Commonwealth, constitutes a violation of any of the specific offenses enumerated within § 1542 (relating to revocation of habitual offender's license); or

(3) an accident occurred in connection with the events surrounding the current offense and any person, other than the defendant, was killed or seriously injured as a result of the accident.

of preliminary disposition for which the Legislature did not expressly provide in the absence of a convincing rationale to do so. In essence, we find that the preliminary disposition provision of the more general drug dependent statute is not applicable as a preliminary disposition · under DUI. *See Commonwealth v. Waters*, 361 Pa.Super. 154, 522 A.2d 60, *appeal denied*, 515 Pa. 621, 531 A.2d 430 (1987) (special newly enacted statute applying to drunk drivers must be construed to take precedence over more general statute permitting probation for drug or alcohol dependency enacted over ten years earlier); 1 Pa.Cons.Stat.Ann. §§ 1933, 1936.

We observe that the inapplicability of the drug dependency statute does not in any way limit the possibilities for therapeutic treatment for substance abusers who drive under the influence. Under 75 Pa.Cons.Stat.Ann. § 1548, the courts have been given a wide mandate to order treatment for those drivers found to be involved with controlled substances or alcohol. Section 1548(a) requires all persons convicted of a DUI violation or offered ARD thereunder to be evaluated using the Court Reporting Network to determine the extent of the person's involvement with drugs or alcohol. Section 1548(c) therein provides:

> Based on the results of evaluation and any additional information and evidence, the court may in addition to any other requirements of the court or this title determine and require, as part of sentencing or condition of parole, probation or Accelerated Rehabilitative Disposition or other preliminary disposition, that the person successfully complete a prescribed program of individual or group intervention or supervised inpatient or outpatient treatment or any other combination of these programs or treatments for a period of up to two years in duration.

It is clear that a complete range of therapeutic programs is available for all levels of DUI offenders under the DUI statute. Thus again, we find no rationale for applying the generally worded and less circumscribed drug dependent

statute in circumstances where the Legislature has set forth special statutes expressly dealing with the treatment of those who drive under the influence.

In sum, for all of the foregoing reasons, we hold that a preliminary disposition under the drug dependent statute, 35 Pa.Stat.Ann. § 780–118(a), is inapplicable where a person is charged with driving under the influence.

### Filing of the second complaint

Snyder also claims that the Commonwealth's failure to file its second information until eight months after arrest requires quashal or dismissal of the charges stated in the second complaint pursuant to Pa.R.Crim.P. 130(b), (d), 131(b), and 315(a).

Rule of criminal procedure 130 states:

(b) When a defendant has been arrested without a warrant for driving under the influence of alcohol or controlled substances, the arresting officer may, when he deems it appropriate, promptly release the defendant from custody rather than taking him before the issuing authority.

. . . .

(d) When a defendant is released pursuant to paragraphs (b) or (c), a complaint shall be filed against the defendant within five (5) days of the defendant's release. Thereafter, a summons, not a warrant of arrest, shall be issued and the case shall proceed as provided in Rule 110.

Where a party seeks a dismissal for a failure to comply with Rule 130, Pa.R.Crim.P. 150 applies. *Commonwealth v. Revtai*, 516 Pa. 53, 532 A.2d 1 (1987). Rule 150 states:

A defendant shall not be discharged nor shall a case be dismissed because of a defect in the form or content of a complaint, summons, or warrant, or a defect in the procedures of this Chapter, unless the defendant raises the defect before the conclusion of the preliminary hearing and the defect is prejudicial to the rights of the defendant.

The Commonwealth argues that Snyder has waived his Rule 130 claim by failing specifically to raise it before the conclusion of the preliminary hearing as required by Pa.R. Crim.P. 150. *Commonwealth v. Revtai, supra; Commonwealth v. Schimelfenig,* 361 Pa.Super. 325, 522 A.2d 605 (1987) (en banc), *appeal denied sub. nom., Commonwealth v. Hall,* 518 Pa. 624, 541 A.2d 1136 (1988).

Under Rule 150, a defect in procedure in a Chapter 100 rule shall not result in a dismissal unless: (1) the defendant has raised the defect before the conclusion of the preliminary hearing [4] and (2) the party seeking relief can show that the Commonwealth's noncompliance prejudiced his rights. The *Comment* to Rule 150 explains that "[o]rdinarily, if a defendant does not raise a defect before the conclusion of the preliminary hearing, the defendant cannot thereafter raise the defect as grounds for dismissal or discharge at a later stage in the proceedings." In the usual case, any defect must be properly raised before the issuing authority who must then specifically describe that defect on the docket to be transmitted to the court of common pleas. Pa.R.Crim.P. 26(a), (b)(9).[5] The transcript of the district judge in this case, who is required by the Rules of Criminal Procedure specifically to record any Rule 150 objections, presents no record of any such objections. We must thus conclude that appellant has failed to preserve his Rule 130 claims for appellate review.

We next address Snyder's motion to dismiss pursuant to Pa.R.Crim.P. 131(b). Rule 131 states:

4. The relevant rules of criminal procedure make clear that "preliminary hearing" refers to a hearing before the issuing authority and not a hearing before the trial judge. *See, e.g.,* Pa.R.Crim.P. 26, 110, 140A, 141, 142, and 143. The relevant case law cited in the *Comment* to Rule 150 makes this equally clear. *See Commonwealth v. Krall,* 452 Pa. 215, 304 A.2d 488 (1973).

5. Under the amendments to Rule 26, the issuing authority need no longer keep a docket, but he "shall" prepare and forward a transcript to the court of common pleas when defendant is held for court and that transcript "shall" include, among other things, "a specific description of any defect properly raised in accordance with Rule 90 or Rule 150...."

(b) When more than one offense is alleged to have been committed by one person arising from the same incident, the issuing authority shall accept only one complaint, and shall docket the matter as a single case.

(c) Upon application by any interested person and proof that any provision of paragraphs (a) or (b) hereof was violated, a judge of the court may order the forfeiture of all additional costs of the issuing authority accrued by reason of such violation, and thereafter such costs shall not be taxed in the case.

A court cannot remedy a violation of rule 131(b) with dismissal. *Commonwealth v. Tome*, 484 Pa. 261, 398 A.2d 1369 (1979). The only remedy is relief from the additional costs incurred from defending the second action separately. *Id.* (citing Pa.R.Crim.P. 131(c)). Snyder has received relief under Rule 131(c) and we find his efforts to dismiss to be without merit.

Snyder also asserts that the second complaint should be dismissed under Pa.R.Crim.P. 315(a) because the Commonwealth failed to file an information in a reasonable time. Rule 315(a) states:

Upon motion and a showing that an information has not been filed within a reasonable time or that an indictment has not been found against a defendant within a reasonable time, the court may order dismissal of the prosecution, or in lieu thereof, make such other order as shall be appropriate in the interests of justice.

Dismissal under Rule 315(a) lies within the court's discretion. *Commonwealth v. DiPasquale*, 431 Pa. 536, 246 A.2d 430 (1968) (ruling on discretionary aspect of prior version of Rule 315).[6] In considering dismissal, the court will look to

**6.** The prior version of Pa.R.Crim.P. 315(a), which was formerly numbered Pa.R.Crim.P. 316(a), provided:

Upon application and a showing that an indictment has not been found against a defendant within a reasonable time or that he has not been brought to trial within a reasonable time after indictment, the court may order dismissal of the prosecution or, in lieu thereof, make such other order as shall be appropriate in the interests of justice.

what ruling is "appropriate in the interests of justice." *Id.*, 431 Pa. at 542, 246 A.2d at 433. A decision made pursuant to Rule 315(a) will not be reversed absent an abuse of that discretion. *Commonwealth v. Kirk*, 220 Pa.Super. 115, 283 A.2d 712 (1971) (ruling on discretionary aspect of prior version of Rule 315).

■ In addressing Snyder's Rule 315 motion, the court found that the Commonwealth was "pushing its luck" in filing an information eight months after arrest. However, as there was no real prejudice to Snyder other than delay, the court ruled against dismissal. Though Rule 315 speaks of the interests of justice and not prejudice, under the circumstances of this case we find no abuse of discretion in the trial court's decision and affirm its ruling to deny Snyder's motion. *Cf. Commonwealth v. Hailey*, 470 Pa. 488, 368 A.2d 1261 (1977) (plurality).

## Blood test

■ Snyder's final claim is that the trial court erred when it admitted results of a blood test as to the alcohol level in Snyder's blood where the evidence of the chain of custody was inadequate to prove that it was Snyder's blood that was in fact tested. We here adopt the reasoning found in the opinion of the trial court and hold this claim to be without merit.

## Work release

■ The final issue in this case is raised by the Commonwealth as cross-appellant.[7] The Commonwealth argues that

Though the subject matter of the past and present rules differ in some respects, the language regarding the discretionary power of the court to dismiss a prosecution remains the same. Thus, we regard those cases on the court's discretionary power to dismiss under former Rule 316(a) as binding precedent on issues of the scope of that same power in current Rule 315(a).

7. The Commonwealth's appeal is permitted under 75 Pa.Cons.Stat. Ann. § 3731(e)(4) which provides:

The Commonwealth has the right to appeal directly to the Superior Court any order of court which imposes a sentence for violation of this section which does not meet the requirements of this section.

because the penalty provisions of the driving under the influence statute require a "minimum term of imprisonment", 75 Pa.Cons.Stat.Ann. § 3731(e)(1),[8] the court erred when it included work release as part of Snyder's sentence. The Commonwealth interprets the word "imprisonment" to mean complete incarceration and to exclude work release. In the alternative, the Commonwealth argues that if work release is permitted, it is limited to picking up litter. We disagree with both assertions.

Section 3731 of the Motor Vehicle Code is applicable to driving under the influence. Subsection (e) entitled, "Penalty", provides for a minimum term of imprisonment. Subsection (h) entitled, "Work Release", applies to "[any] person [who] is sentenced to a period of imprisonment...." The text of subsection (h) provides:

Work release.—In any case in which a person is sentenced to a period of imprisonment as a result of a conviction for violating any provision of this section, the judicial officer imposing that sentence shall consider assigning that person to a daytime work release program pursuant to which the person would be required to collect litter from public and private property, especially property which is littered with alcoholic beverage containers.

Under this statute, the sentencing judge is clearly permitted to consider assigning a prisoner to work release in "any case" where the person has received a sentence of imprisonment for driving under the influence. The Commonwealth maintains that even if work release is available under subsection (h) the type of work release is limited to collecting litter. We do not agree with the Commonwealth's narrow interpretation of the statute. The statute provides for the availability of work release in general with the specific mention of litter collection as one suggested activity during work release. The legislative history of the bill

8. Section 3731(e)(1) provides:
   Any person violating any of the provisions of this section is guilty of a misdemeanor of the second degree and the sentencing court shall order the person to pay a fine of not less than $300 and serve a *minimum term of imprisonment....* (emphasis added).

supports this interpretation.[9] 1 Pa.Cons.Stat.Ann. § 1921(c)(7) (Purdon 1988).

The specific legislative history of the work release provision, section 3731(h), is instructive. In 1982, Representative Lloyd, the sponsor of subsection (h), stated that

[e]arlier today we affirmed our desire to have work release available for people who are in prison for second and subsequent offenses for drunk driving. [Section 3731(h) ] would require judges, when they are considering the various kinds of work release which they might approve, would have them consider sentencing that person to work cleaning up litter especially litter dealing with discarded alcoholic beverage containers.

*See* Pa. House Leg. 1726 (September 29, 1982).

Representative Lloyd's amendment did not reach the Senate in the 1982 legislative session. Pa. House Leg. 1686 (June 24, 1984). The amendment was finally adopted, however, in 1984. During the later legislative session, Representative Lloyd again made clear that "if you believe this person is appropriate for work release, you ought to consider assigning him to go out and pick up litter.... " *Id.* In response to a question from another legislator, Representative Lloyd made clear that his amendment was only "in addition to existing penalties." *Id.* The House then voted 194 to 0 to adopt the work release provision which is section 3731(h) in its present form.

In light of this legislative history of the statute, we find that a court is permitted to grant work release to a person who receives a minimum sentence of imprisonment under

**9.** In reviewing the legislative history regarding work release, we rely on statements made by the sponsor of subsection (h). In analyzing legislative history the usual rule bars consideration of comments made during floor debates. The rationale behind this rule is that the view of one legislator is not a reliable indicator of what the entire Legislature intended in adopting legislation. However, where the statements made on the floor are made only for purposes of clarification, they may be considered. *Cf. Commonwealth v. Pryor*, 347 Pa.Super. 239, 500 A.2d 811 (1985) (citing from floor debates to lend support to ruling that a person sentenced to a term of imprisonment for driving under the influence cannot receive early parole).

the driving under the influence statute and the type of work release is not limited to litter collection.

In sum, we reject the arguments of both parties and affirm the judgment of sentence.

Judgment of sentence affirmed.