588 A.2d 936

**COMMONWEALTH of Pennsylvania**

v.

**David CORRADINO, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 11, 1990.

Filed March 26, 1991.

Gerald P. Deady, Wilkes–Barre, for appellant.

Karen Tomaine, Asst. Dist. Atty., Clarks Summit, for Com., appellee.

Before MONTEMURO, TAMILIA and HOFFMAN, JJ.

HOFFMAN, Judge:

This appeal is from the judgment of sentence for violating § 6115 of the Uniform Firearms Act, *see* 18 Pa.C.S.A. §§ 6101–6124. Appellant contends that the trial court erred in (1) admitting into evidence computer printouts; and (2) denying his demurrer.[1] We affirm.

The facts giving rise to the prosecution below were aptly summarized by the trial court as follows:

This matter had its origination in an occurrence which took place on May 26, 1986 when the body of a [D]own [V]alley police officer was found shot to death. Nearby was found the body of one David Williams, also shot to death, and, in his hand, his thumb on the trigger, a .44 caliber Ruger Red Hawk pistol. State Troopers Eugene McDonald and Carl M. Allen investigated the scene. It was determined from the serial number on the revolver that the weapon was owned by David Corradino, the

---

1. Appellant also contends that the trial court erred in admitting into evidence an inculpatory statement that he made to police. Appellant argues that the statement should not have been admitted because the Commonwealth did not first establish the *corpus delicti* of the crime charged. After carefully reviewing the record and the parties' briefs, we conclude that the trial court has adequately addressed and properly disposed of this contention in its opinion. Thus, we need not address the claim further.

In addition, appellant maintains that the court below should have granted his demurrer because the Commonwealth failed to prove the *corpus delicti*. In light of our agreement with the trial court's disposition of the substantive aspect of appellant's *corpus delicti* argument, this derivative claim necessarily must fail.

Defendant herein. On May 27, 1986, the Defendant was interviewed at his home by State Trooper Stanley J. Jazewski, Detective Michael Dessoye of Luzerne County and Capt. William Thomas of the Avoca Police Department. He made a statement, at that time, that he had loaned the pistol to Williams on May 25, 1986. The Defendant was ultimately arrested on June 3, 1986.

Trial Court Opinion at 1. Appellant was charged with violating 18 Pa.C.S.A. § 6115, which provides that:

No person shall make any loan secured by mortgage, pledge or deposit of a firearm; nor shall any person lend or give a firearm to another or otherwise deliver a firearm contrary to the provisions of this subchapter.

*Id.* The case proceeded to trial on February 19, 1987, but a mistrial was declared after the jury was unable to reach a unanimous verdict. Appellant was retried before a jury on June 8–9, 1987. At the close of the Commonwealth's case, appellant demurred. The demurrer was denied, and the defense rested without presenting evidence. Appellant then was found guilty. Post-trial motions were filed and denied, and, on February 16, 1990, appellant was sentenced to a one-year term of probation. This timely appeal followed.

■ Appellant first contends that the trial court erred in allowing the Commonwealth to introduce into evidence two computer printouts. The first printout was a request made to the National Crime Information Center (NCIC), asking whether the Ruger Red Hawk that was found in David Williams's hand had been reported stolen. The second printout was the reply from NCIC, which indicated that there was no report that the gun had been stolen. The printouts were relevant, of course, because if the gun had not been stolen, it was more likely that appellant had violated § 6115. Appellant claims, however, that these reports were inadmissible hearsay. He argues that the printouts were "official records," and thus the Commonwealth was required to authenticate them pursuant to 42

Pa.C.S.A. § 6103 and § 5328. This claim may be rejected summarily.

Section 6103, "Proof of Official Records," provides, in relevant part:

> **(a) General Rule.**—An official record kept within this Commonwealth by any court, district justice or other government unit, or an entry therein, when admissible for any purpose, may be evidenced by an official publication thereof or by a copy attested by the officer having the legal custody of the record, or by his deputy, and accompanied by a certificate that the officer has the custody. The certificate may be made by any public officer having a seal of office and having official duties with respect to the government unit in which the record is kept, authenticated by the seal of this office, or if there is no such officer, by:
>
> > (1) The Department of State, in the case of any Commonwealth agency.
> >
> > (2) The clerk of the court of common pleas of the judicial district embracing any county in which the government unit has jurisdiction, in the case of any government unit other than a Commonwealth agency.

*Id.* § 6103(a). Section 5328(a) contains similar language and governs, *inter alia,* official records kept within the United States. It has been noted that "[t]he effect of these statutes is to provide a means for satisfying the authentication requirement, and, in effect, to dispense with the need for the custodian of the records to appear in court as required under the business records statute." L. Packel & A. Poulin, *Pennsylvania Evidence* § 803.8, at 593 (1987 & Supp.1990).

After reviewing these sections, we agree with the trial court's observation that "[i]t is readily apparent, from the titles and texts, that these two statutes apply to official records of governmental units which computer prin[t]outs from the National Crime Information Center are not." Trial Court Opinion at 8. Moreover, we agree with the trial court that the admissibility of the printouts should be

determined under the business records exception to the hearsay rule. As is noted in *McCormick on Evidence:*

With the explosive development of electronic data processing, most business and business-type records are generated by so-called computers. Courts have agreed that their admissibility in evidence is governed by the hearsay exception for regularly kept records, whether at common law or in the form of a statute or rule.

E. Cleary, *McCormick on Evidence* § 314, at 885 (3d ed. 1984 & Supp.1987).

In Pennsylvania, the admissibility of business records is governed by 42 Pa.C.S.A. § 6108, which provides in relevant part:

(b) **General Rule.**—A record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the tribunal, the sources of information, method and time of preparation were such as to justify its admission.

(c) **Definition.**—As used in this section "business" includes every kind of business, profession, occupation, calling, or operation of institutions whether carried on for profit or not.

*Id.* Our Supreme Court has noted that the purpose of this legislation is to:

merely require that the basic integrity of the record keeping is established. Where it can be shown that the entries were made with sufficient contemporaneousness to assure accuracy and that they were made pursuant to the business practices and not influenced by the litigation in which they are being introduced, a sufficient indicia of reliability is provided to overcome their hearsay nature.

*In re Estate of Indyk,* 488 Pa. 567, 572, 413 A.2d 371, 373 (1979) (footnote omitted). *See Williams v. McClain,* 513 Pa. 300, 305, 520 A.2d 1374, 1376 (1987) ("The basic justification for the business records exception to the hearsay

rule is that the purpose of keeping business records builds in a reliability which obviates the need for cross-examination") (citations omitted); *see also* L. Packel & A. Poulin, *supra,* § 803.6, at 582. "Whether a document should be admitted under the 'business record' exception is within the discretionary power of the trial court provided such is exercised within the bounds of [§ 6108]." *Thomas v. Allegheny & Eastern Coal Co.,* 309 Pa.Super. 333, 340, 455 A.2d 637, 640 (1982).

Here, it is apparent that the trial court did not abuse its discretion in admitting the printouts under the business records exception. State Trooper Carl M. Allen testified in detail concerning the identity of the printouts, when they were made, how they were obtained, and their mode of preparation. *See* N.T. June 8, 1987, at 106–08, 128–31. This testimony provided a sufficient indication of the reliability of the printouts to warrant their admission.[2] Accordingly, appellant is not entitled to relief on this ground.

■ Appellant next contends that the court erred in denying his demurrer.[3] Our Supreme Court has noted that:

The test to be applied in ruling on a demurrer is whether, accepting as true all of the prosecution's evidence and all reasonable inferences therefrom, it is sufficient to support a finding by the fact-finder that the defendant is guilty beyond a reasonable doubt.

*Commonwealth v. Turner,* 491 Pa. 620, 622, 421 A.2d 1057, 1058 (1980); *see also Commonwealth v. David,* 345 Pa.Super. 578, 580, 498 A.2d 975, 976 (1985).

In the present case, appellant was accused of violating § 6115 of the Uniform Firearms Act, which provides, in pertinent part: "nor shall any person lend or give a firearm

2. Appellant has confined his argument on appeal to his assertion that the printouts were official records; thus, he does not suggest that Trooper Allen's testimony was insufficient to qualify the printouts under the business records exception.

3. Because appellant did not present a defense after the trial court's adverse ruling on his demurrer, the propriety of the court's ruling on the demurrer is preserved for appellate review. *Commonwealth v. David,* 345 Pa.Super. 578, 580, 498 A.2d 975, 976 (1985).

to another or otherwise deliver a firearm contrary to the provisions of this subchapter." The trial court instructed the jury that it could find appellant guilty under § 6115 if it determined that his lending of the firearm was contrary to § 6111 of the Act, which governs the sale and registration of firearms. N.T. June 9, 1987 at 318–19. Thus, the court apparently reasoned that loans of firearms were subject to the registration requirements of the Act.

Appellant notes that § 6111, by its terms, governs only the *sale* of firearms, and that there is nothing in that section, or any other section of the Act, to suggest that the registration procedures outlined in § 6111 apply to the *lending* of a firearm. Because there is no section other than § 6115 which addresses the lending of a firearm, appellant argues, the Commonwealth failed to show that his lending of the firearm was contrary to any *other* provision of the Uniform Firearms Act, and thus his demurrer should have been granted.

A court must construe the words of a statute according to their plain meaning. *E.g.*, *Commonwealth v. Stanley*, 498 Pa. 326, 335, 446 A.2d 583, 587 (1982); *see also* 1 Pa.C.S.A. § 1903(a) ("[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage"). The primary object of all statutory interpretation, of course, "is to ascertain and effectuate the intention of the General Assembly." 1 Pa. C.S.A. § 1921(a); *see also Commonwealth v. Snyder*, 385 Pa.Super. 58, 65, 560 A.2d 165, 169 (1989). When the words of a statute are clear and free from ambiguity, the interpretation is relatively simple; in such circumstances, "the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.A. § 1921(b); *see also Coretsky v. Board of Comm'rs of Butler Twp.*, 520 Pa. 513, 517, 555 A.2d 72, 74 (1989). When, however, the words of a statute are not explicit, legislative intent may be ascertained by considering, *inter alia*, the occasion and necessity of the statute, the circumstances in which it was enacted, the mischief to be remedied, and the object to be attained by

the legislation. 1 Pa.C.S.A. § 1921(c); *see also Common-wealth v. Snyder, supra* 385 Pa.Super. at 65–66, 560 A.2d at 169.

Here, as a matter of statutory construction, we must agree with appellant that the registration provisions of the Act do not govern the lending of a firearm. The only reference to "lending" of firearms is in § 6115. For example, § 6111, which is entitled "Sale of firearms," speaks in terms of "sellers" and "purchasers" of firearms, and imposes registration and time constraints on the sale and delivery of firearms. Similarly, § 6116, which governs "false evidence of identity" in securing firearms, speaks in terms of persons "purchasing or otherwise securing delivery" of firearms, or "applying for a license to carry the same." The Act is silent on the question whether "loans" of a firearm must be registered. In short, there is no textual support for a conclusion that the legislature intended that loans of a firearm should be subject to the registration provisions contained in § 6111.

Our conclusion that the Act does not require that loans of firearms be registered, however, does not end the inquiry. Appellant's argument proceeds on the assumption that § 6115 is not a blanket prohibition against lending firearms, but only prohibits lending a firearm contrary to other provisions of the Act.[4] We cannot agree. A plain reading of the section, as well as a consideration of the purpose of the Act, indicates that the section is intended to prohibit all lending of firearms. The heading of § 6115 reads "Loans on, or lending or giving firearms *prohibited.*" *Id.* (emphasis supplied). The heading affixed to a section of a statute, of course, is not controlling. 1 Pa.C.S.A. § 1924. However, it "may be used to aid in the construction" of the statute, *id.*, and the heading of § 6115 suggests that the General Assembly intended that *all* loans of firearms be prohibited. The structure of § 6115 provides further support for this

---

4. Thus, appellant suggests that the § 6115 is intended only to prevent, for example, loans of firearms to convicts, *see* 18 Pa.C.S.A. § 6105, or to minors, *id.* § 6110.

conclusion. The word "firearm" is mentioned twice in the clause at issue. The first part of the clause provides that "nor shall any person lend or give a firearm to another," which suggests an absolute ban on lending or delivering a firearm. The second reference to firearm reads "or otherwise deliver a firearm contrary to the provisions of this subchapter." It would appear, therefore, that § 6115 draws a distinction between lending or giving a firearm, on one hand, and delivering a firearm, on the other. Moreover, after reviewing the Act as a whole in light of this distinction, we agree with the Commonwealth that the "contrary to the provisions" qualification is properly limited only to *other* deliveries of a firearm.

The distinction that the section draws between "lending or giving" and "delivering" is sensible. As we have noted above, the only mention of the word "lend" occurs in § 6115. Because no other section regulates loans of firearms, the lending of a firearm could never be contrary to any other provision of the Act, and thus the qualification would be meaningless when loans are involved. The Act, however, *does* impose numerous restrictions on other types of delivery of firearms. The qualification in § 6115, therefore, appears to be a careful attempt to insure that when a firearm is "delivered" other than by loan or gift (which are *absolutely* prohibited), such delivery must comply with the registration requirements of the Act.

A consideration of the legislative intent that animates the Act provides further support for this construction. The apparent purpose of the Act is to regulate the possession and distribution of firearms, which are highly dangerous and are frequently used in the commission of crimes. As the trial court aptly noted in its Opinion:

> The intention of the General Assembly must be ascertained by considering the mischief to be remedied and the object to be attained.... Under the Uniform Firearms Act, the mischief to be remedied was the unimpeded circulation of dangerous instruments and the object to be attained was the regulation and registration of transfers

of same. The General Assembly has prohibited the transfer of certain defined firearms to various categories of individuals. The enforcement of these prohibitions is through a system of registration under sec. 6111 designed to uncover information about those who seek to acquire firearms.

Trial Court Opinion at 13–14 (citation omitted). The Act thus insures that a record is made of who possesses firearms, and that the fitness requirements (i.e., proscriptions premised on age, 18 Pa.C.S.A. § 6110, certain prior convictions, *id.* § 6105, § 6110, drug addictions, *id.* § 6110, etc.) in the Act are met. The ban on loans in § 6115 furthers this intention because such transfers are unlikely to be recorded. The section thus prevents persons who are prohibited from acquiring firearms by purchase from acquiring them through loan, gift or other transfer. If persons could give or lend firearms at will, these registration and fitness requirements would be rendered meaningless. Similarly, the requirement that other deliveries, when made, must comply with other provisions in the Act also furthers the legislative intent, as it insures that transfers that are of a type that are permitted and *can* be recorded (for example, sales of firearms), *will* be recorded.[5]

5. Appellant also argues that, if § 6115 is interpreted to prohibit the lending of firearms, it is unconstitutional. Appellant's argument in this regard is not at all clear. To the extent that he suggests that the statute is unconstitutional because it does not contain an express intent element, the argument is meritless. Our Supreme Court has noted that § 302 of the Crimes Code defines the general requirements for criminal culpability for offenses in Pennsylvania. *See Commonwealth v. Heck*, 517 Pa. 192, 200, 535 A.2d 575, 579 (1987). Section 302(a) provides:

(a) **Minimum requirements of culpability.**—Except as provided in section 305 of this title (relating to limitations on scope of culpability requirements), a person is not guilty of an offense unless he acted intentionally, knowingly, recklessly or negligently, as the law may require, with respect to each material element of the offense.

*Id.* We should also note that the fact that the statute does not specifically mention the intent required is not unusual. As Professors LaFave and Scott have stated:

Although it is true that burglary is not generally expressly defined as "intentionally breaking and entering," etc., larceny as "intentionally

In summary, we hold that proof that a person loaned a firearm is sufficient to sustain a conviction under 18 Pa. C.S.A. § 6115. And, in this case, appellant's admission that he loaned the firearm to David Williams was sufficient to support a finding of guilt. Thus, the court did not err in denying appellant's demurrer.[6] *See Commonwealth v. Turner, supra; Commonwealth v. David, supra.*

For the foregoing reasons, we affirm the judgment of sentence.

Judgment of sentence affirmed.

taking and carrying away," etc., or rape as "intentionally having sexual intercourse," etc., such an intention is nevertheless a requirement for each of these crimes. Sometimes it is spoken of as a "general intent" to distinguish it from the "specific intent" which a crime may specifically, by its definition, require, over and above any required intention to engage in the forbidden conduct (as burglary requires a specific intent to commit a felony, larceny a specific intent to steal).
W. LaFave & A. Scott, *Substantive Criminal Law,* § 3.5(a), at 303 (1986). *See also Morissette v. United States,* 342 U.S. 246, 250, 72 S.Ct. 240, 243, 96 L.Ed. 288 (1951) ("mere omission from a criminal enactment of any mention of intent should not necessarily be construed as dispensing with it") (*quoted in Commonwealth v. Barone,* 276 Pa.Super. 282, 311, 419 A.2d 457, 473 (1980) (SPAETH, J., concurring)). Here, appellant has made no argument, either in the court below or on this appeal, concerning the adequacy of the court's jury instruction on criminal intent. In addition, in light of appellant's confession, there can be no question of appellant's culpability in lending the firearm to David Williams.

6. We are aware that the Court's jury instruction was erroneous, as it directed the jury that it had to find *both* that appellant loaned the gun, and that the lending of the gun was contrary to the registration requirements in the Act. Because the instruction, as given, was more *protective* of appellant, however, the erroneous inclusion of this *added* element of the crime did not prejudice appellant.