603 A.2d 1044
**COMMONWEALTH of Pennsylvania**
v.
**John B. SNOWDY, Appellant.**
Superior Court of Pennsylvania.
Argued Jan. 16, 1992.
Filed Feb. 26, 1992.

494

Gary B. Zimmerman, Pittsburgh, for appellant.

Kevin F. McCarthy, Asst. Dist. Atty., Pittsburgh, for Com., appellee.

496

Before CAVANAUGH, WIEAND and HESTER, JJ.

HESTER, Judge:

John B. Snowdy appeals from the judgment of sentence, entered in the Court of Common Pleas of Allegheny County on August 10, 1990, following his conviction by a jury of two counts of conspiracy and one count each of possession, possession with intent to deliver, and delivery of a controlled substance. He was sentenced to an aggregate term of imprisonment of eight to twenty years and directed to pay both a fine and the cost of prosecution. For the reasons set forth below, we affirm.

The procedural history of this case may be summarized as follows. On June 13, 1987, shortly after arriving in Allegheny County from Florida, appellant utilized the Ross Township motel room that his traveling companion had rented to consummate a large cocaine deal with Glenn Schnarviler, a confidential police informant. Following the completion of that transaction, officers of the Allegheny County Police Department arrested appellant and charged him with one count each of conspiracy, possession, possession with intent to deliver, and delivery of a controlled substance. By a second complaint filed the same day, appellant was charged with an additional count of conspiracy in connection with a drug deal that he and Schnarviler completed prior to the latter's engagement as an informant.

On November 6, 1989, appellant was convicted of the charged offenses. The trial court subsequently denied appellant's post-verdict motions and imposed the described sentence. Thereafter, upon determining that defense counsel ineffectively failed to file a requested appeal within the appropriate thirty-day period, the court granted appellant permission to pursue this appeal nunc pro tunc.

Appellant asserts that the trial court improperly denied demurrers relating to both conspiracy counts.[1] However,

1. While our review of appellant's brief demonstrates that he does not mention the term "demurrer" in connection with the arguments at issue in this discussion, we believe that his challenges clearly relate to

as our review of the record reveals that appellant's contentions in this regard are either waived or without merit, we find this assertion affords him no relief. In *Commonwealth v. Corradino*, 403 Pa.Super. 251, 588 A.2d 936 (1991), we considered the propriety of a trial court's denial of a demurrer and set forth the well-established test utilized in resolving that issue. Quoting *Commonwealth v. Turner*, 491 Pa. 620, 421 A.2d 1057 (1980), we stated:

> The test to be applied in ruling on a demurrer is whether, accepting as true all of the prosecution's evidence and all reasonable inferences therefrom, it is sufficient to support a finding by the fact-finder that the defendant is guilty beyond a reasonable doubt.

*Commonwealth v. Corradino, supra,* 403 Pa.Super. at 256, 588 A.2d at 939. Utilizing these principles, we must examine the evidence presented by the Commonwealth in conjunction with the specific arguments raised by appellant.

Our review of the Commonwealth's evidence reveals the following facts. In 1986, David Jackson informed Glenn Schnarviler, an acquaintance, that appellant, a resident of Florida, could fill his cocaine orders. Consequently, Jackson provided Schnarviler, who resided in Allegheny County, with appellant's beeper number. In the months that followed, Schnarviler and appellant completed a number of increasingly larger cocaine transactions.

In May, 1987, Schnarviler placed a telephone call to appellant's beeper. When appellant returned the call, Schnarviler informed him of his interest in purchasing three kilograms of cocaine. After some discussion, the two agreed upon the price for the cocaine, $74,000, the place for its delivery, Miami, and Schnarviler's mode of transportation to Miami, airplane. On May 22, 1987, Schnarviler informed appellant he was ready to depart and boarded a

the alleged denial of demurrer requests. Our conclusion in this regard is supported by a close reading of those arguments, which indicate that the trial court should have dismissed the conspiracy counts at the conclusion of the Commonwealth's case-in-chief.

flight for Miami at the Greater Pittsburgh International Airport.

Upon arriving in Miami, Schnarviler was met by appellant. The two men then proceeded to a nearby motel room where Schnarviler provided appellant with the agreed upon cash. Appellant accepted the money and exited the room. Several hours later, he reentered the room, handed the cocaine to Schnarviler, and left.

After he returned to the Pittsburgh area, Schnarviler hid two of the kilograms and "fronted" the third one to Jackson for sale on the street. On the evening of June 2, 1987, Officer David Walls of the Allegheny County Police Department purchased the entire kilogram from Jackson for $39,-000. Consequently, Jackson and his girlfriend, Lori Lascar, were arrested. Later that evening, during the course of his interrogation, Jackson agreed to cooperate with the police. He named Schnarviler as his supplier, indicated that he owed Schnarviler $36,000 for the kilogram, and delivered official currency in that amount to Schnarviler's residence.

As a result of Jackson's actions, Schnarviler also was arrested. A short while later, he informed the police of the circumstances surrounding his purchase of the cocaine and agreed to act as a confidential informant in a transaction involving appellant. Accordingly, Schnarviler, who also provided the police with the two kilograms which he had hidden, engaged in a number of monitored telephone conversations with appellant in an effort to convince him to deliver cocaine to Pittsburgh. Eventually, the two men agreed that appellant, in exchange for $118,000, would deliver one kilogram of cocaine to Schnarviler in Pittsburgh and that Schnarviler subsequently would travel to Florida to take possession of four additional kilograms of the substance. Shortly thereafter, in accordance with this agreement, appellant, accompanied by Hugh Sheridan, began the journey to Allegheny County.

On June 13, 1987, following their arrival in the Pittsburgh area, Sheridan rented a room at a Ross Township motel and appellant telephoned Schnarviler. Later that day, immedi-

ately after appellant and Schnarviler completed the cocaine transaction in the motel room, appellant was arrested.

Appellant contends that the evidence presented by the Commonwealth was insufficient to demonstrate that Pennsylvania had jurisdiction over the conspiracy count arising from the May 22, 1987 transaction. This contention is devoid of merit.

Preliminarily, we note that the boundaries of the Commonwealth's jurisdiction over criminal matters are set forth in 18 Pa.C.S. § 102(a). In pertinent part, that section states:

(a) *General rule.*—Except as otherwise provided in this section, a person may be convicted under the law of this Commonwealth of an offense committed by his own conduct or the conduct of another for which he is legally accountable if either:

. . . .

(3) conduct occurring outside this Commonwealth is sufficient under the law of this Commonwealth to constitute a conspiracy to commit an offense within this Commonwealth and an overt act in furtherance of such conspiracy occurs within this Commonwealth;

(4) conduct occurring within this Commonwealth establishes complicity in the commission of, or an attempt, solicitation or conspiracy to commit, an offense in another jurisdiction which also is an offense under the law of this Commonwealth[.]

Thus, in order to determine the correctness of appellant's contention, we must decide if the Commonwealth adduced evidence demonstrating the applicability of either of the provisions in question. We begin our analysis on this issue with subsection (a)(3).

The crime of conspiracy is defined in 18 Pa.C.S. § 903(a). According to that section, a defendant is guilty of conspiring with another person to commit a crime if with the intent of promoting or facilitating its commission he agrees with such other person that they or one or more of them will

engage in conduct which constitutes that crime or an attempt or solicitation to commit that crime.

> "The essence of criminal conspiracy is a common understanding, no matter how it came into being, that a particular criminal objective be accomplished." *Commonwealth v. Carter*, 272 Pa.Superior Ct. 411, 416 A.2d 523 (1979); *Commonwealth v. Anderson*, [265 Pa.Super. 494, 402 A.2d 546 (1979)]. By its very nature, the crime of conspiracy is frequently not susceptible of proof except by circumstantial evidence. *Commonwealth v. Carter, supra; Commonwealth v. Kwatkoski*, 267 Pa.Superior Ct. 401, 406 A.2d 1102 (1979). And although a conspiracy may not be based upon mere suspicion or conjecture, *Commonwealth v. Anderson, supra*, a conspiracy "may be inferentially established by showing the relationship, conduct or circumstances of the parties, and the overt acts on the part of the co-conspirators have uniformly been held competent to prove that a corrupt confederation has in fact been formed." *Commonwealth v. Carter, supra*, quoting *Commonwealth v. Horvath*, 187 Pa.Superior Ct. 206, 211, 144 A.2d 489, 492 (1958).

*Commonwealth v. Volk*, 298 Pa.Super. 294, 300–01, 444 A.2d 1182, 1185 (1982). *See also Commonwealth v. Lanager*, 360 Pa.Super. 578, 521 A.2d 53 (1987); *Commonwealth v. Ford*, 315 Pa.Super. 281, 461 A.2d 1281 (1983); *Commonwealth v. Lamb*, 309 Pa.Super. 415, 455 A.2d 678 (1983).

 In the present case, the Commonwealth introduced evidence demonstrating that appellant, while conversing from a telephone located in Florida, agreed to sell Schnarviler, a resident of Allegheny County, three kilograms of cocaine and that the transaction was consummated in Miami on May 22, 1987. In addition, it adduced evidence indicating that Schnarviler previously had purchased cocaine from appellant. In light of the significant relationship of the parties, the large amount of cocaine at issue, and the fact of Schnarviler's residence in Allegheny County, it is clear that Schnarviler planned to distribute the cocaine in this Commonwealth. Therefore, appellant, by both consenting to

and consummating the sale, conspired to participate in and benefit financially from Schnarviler's criminal objective. Thus, we find that the evidence produced by the Commonwealth demonstrates that the actions committed by appellant in Florida are sufficient to establish his involvement in a conspiracy relating to the distribution of cocaine in Pennsylvania.

■ Having determined that the evidence presented by the Commonwealth was sufficient to satisfy the initial requirement of 18 Pa.C.S. § 102(a)(3), we turn to the question of whether it also demonstrated that appellant or some person for whom he was accountable committed an overt act in furtherance of the conspiracy in Pennsylvania. As mentioned previously, the Commonwealth adduced evidence indicating that Schnarviler, in furtherance of the conspiracy, boarded an airplane bound for Miami at the Greater Pittsburgh International Airport. Since it is clear that a defendant is responsible for all actions undertaken pursuant to a conspiracy by a coconspirator, *see* 18 Pa.C.S. 903(e), the Commonwealth established that appellant committed the requisite overt act. Thus, contrary to the claims raised by appellant, we conclude that the evidence produced by the Commonwealth was sufficient to demonstrate that the courts of Pennsylvania possessed the requisite jurisdiction over the conspiracy count.[2]

■ Appellant also contends that the evidence presented by the Commonwealth in connection with the May 22, 1987 conspiracy count merely established a buyer-seller relationship and therefore, cannot support his conviction for that offense. However, as we demonstrated in our discussion regarding jurisdiction, the evidence adduced by the Commonwealth inferentially showed that appellant agreed with, participated in, and benefitted from Schnarviler's plan to distribute cocaine in Allegheny County. Accordingly, we conclude that this claim of error must fail.

2. In light of our holding, we do not address the applicability of 18 Pa.C.S. § 102(a)(4).

■ Appellant's final claim regarding the trial court's denial of his demurrers relates to the conspiracy count arising from the June 13, 1987 transaction. Appellant contends that since Hugh Sheridan, his sole alleged coconspirator, was acquitted in prior proceedings of all charges arising out of the incident, he could not be convicted of that offense. Although our review of the record reveals that appellant filed an unsuccessful pretrial motion seeking dismissal of the charge on identical grounds, it demonstrates that his demurrer questioned only the sufficiency of the evidence utilized to prove Sheridan's involvement in the conspiracy. Thus, as appellant failed to raise the matter in connection with the demurrer request, we find that his claim in this regard is waived. *See Commonwealth v. Johnson,* 368 Pa.Super. 427, 534 A.2d 511 (1987) (failure to raise an argument in timely manner at trial results in its waiver).

■ Moreover, even if we determined that appellant properly had preserved the issue for our review, it would afford him no relief since we recently concluded that the acquittal of an alleged conspirator in a separate trial does not preclude finding his only alleged coconspirator guilty of conspiracy in subsequent proceedings. *See Commonwealth v. Phillips,* 411 Pa.Super. 329, 601 A.2d 816 (1992).

■ Appellant also asserts that the trial court erroneously permitted Thomas Dayton, an employee of the Allegheny County Department of Laboratories, to testify as an expert witness and thereby indicate that the substance obtained during the June 13, 1987 transaction contained cocaine. In this regard, he alleges that Dayton lacked the qualifications necessary to give such testimony. This assertion is without merit.

In *Commonwealth v. McCloy,* 393 Pa.Super. 217, 220–21, 574 A.2d 86, 88 (1990), we considered the propriety of a trial court's decision to permit certain expert testimony and, quoting *Commonwealth v. Pearsall,* 368 Pa.Super. 327, 534 A.2d 106 (1987), *overruled on other grounds, Common-*

*wealth v. Garcia*, 403 Pa.Super. 280, 588 A.2d 951 (1991) (*en banc*), we stated:

To qualify as an expert witness, a witness need only have a "reasonable pretension to specialized knowledge," on a subject for which expert testimony is admissible. *Commonwealth v. Washington*, 235 Pa.Super. 339, 340 A.2d 896 (1975). An expert's pretension to specialized knowledge may be based upon practical, occupational, or other experiential training; the expert need not have gained expertise through academic training. *Commonwealth v. Ellis*, 354 Pa.Super. 11, 510 A.2d 1253 (1986); *Commonwealth v. Daniels*, 280 Pa.Super. 278, 421 A.2d 721 (1980). The determination of whether a witness is qualified to offer an expert opinion on a particular subject is a matter addressed to the sound discretion of the trial court, and its discretion will not be reversed absent a clear abuse of discretion. *Commonwealth v. Samuels*, 354 Pa.Super. 128, 511 A.2d 221 (1986); *Commonwealth v. Ellis, supra; Commonwealth v. Bulling*, 331 Pa.Super. 84, 480 A.2d 254 (1984).

With these principles in mind, we turn to the merits of appellant's claim.

During voir dire, Dayton testified that he obtained a Bachelor of Science degree in chemistry from Gannon University and a Masters degree in pharmacology and toxicology from Duquesne University but had taken no subjects specifically relating to drug identification. In addition, Dayton indicated that he had been employed as a criminalist for the Allegheny County Department of Laboratories for nine years, that his position consisted exclusively of analyzing substances for the presence of drugs, and that many of his analyses concerned cocaine. Furthermore, Dayton stated that he had attended various seminars relating to instrumental methods utilized in drug analyses.

Despite Dayton's admission that he had received no formal education in the area of drug identification, we believe that the trial court properly could have concluded that Dayton possessed the requisite knowledge to testify as an

expert concerning the identification of the substance obtained from appellant based upon Dayton's experience. Our conclusion in this regard is unaltered by the fact that Dayton apparently had difficulty in recalling the precise chemical formula for cocaine. Accordingly, we decline to disturb the trial court's decision on the matter.[3]

Finally, appellant asserts that the trial court erroneously permitted Dennis Hahn, another employee of the Allegheny County Department of Laboratories, to testify after he violated the court's sequestration order by conversing with Dayton about the case. This assertion is without merit.

It long has been clear that a trial court possesses the discretion to permit a witness who has violated a sequestration order to testify. *Commonwealth v. Mokluk,* 298 Pa.Super. 360, 444 A.2d 1214 (1982). In exercising that discretion, which will be reversed only in the absence of reasonable support, the court should consider the seriousness of the violation, its impact on the testimony of the witness, its impact on the case, whether the witness intentionally disobeyed the sequestration order, and whether the party calling the witness procured the disobedience. *Id.* In the present case, the trial court supported its decision by implying that Hahn had unintentionally violated the sequestration order and by indicating that the violation neither impacted on the case or prejudiced appellant. *See* Trial court opinion at 26–27.

An examination of the record reveals that the trial court's conclusions are supported by ample evidence. During voir dire, Hahn, who was called to testify as an expert concerning the purity of the cocaine contained in the substance obtained from appellant, specifically indicated that he had

3. We note that appellant also asserts in his argument that the various tests performed by Dayton could not conclusively identify the substance obtained from appellant as cocaine. This assertion, which raises no concern regarding Dayton's qualifications, has no impact upon the trial court's decision to permit him to testify as an expert. Instead, it raises concerns regarding the weight to be accorded Dayton's identification of the substance. Consequently, we need not address the matter further.

been unaware of the sequestration order at the time of its violation. Furthermore, as he had been called to testify as to the substance's purity rather than its identification, his discussion with Dayton could have had little impact upon either his testimony or the outcome of the case. Accordingly, we conclude that the trial court did not abuse its discretion by permitting Hahn to testify.

Judgment of sentence affirmed.

WIEAND, J., concurs in the result.